Filed 12/19/16 (unmodified opn. attached)

CERTIFIED FOR PUBLICATION

COURT OF APPEAL, FOURTH APPELLATE DISTRICT

DIVISION ONE

STATE OF CALIFORNIA

| | |
|---|---|
| MEDICAL MARIJUANA, INC., et al., | D068523 |
| Plaintiffs and Respondents, | |
| v. | (Super. Ct. No. 37-2014-00036039-CU-DF-CTL) |
| PROJECTCBD.COM et al., | |
| Defendants and Appellants. | ORDER MODIFYING OPINION AND DENYING REHEARING |
| | NO CHANGE IN JUDGMENT |

THE COURT:

It is ordered that the opinion filed herein on November 21, 2016, be modified as follows:

On page 21, the paragraph beginning "Thus, the operative pleading" is deleted in its entirety and the following two paragraphs are inserted in its place.

Thus, the specific factual allegations identifying the conduct that the Project CBD defendants are alleged to have engaged in are inconsistent with the conduct that is alleged to form the basis of the libel and false light counts. "Where a pleading includes a general allegation, such as an allegation of an ultimate fact, *as well as specific allegations that add details or explanatory facts*, it is possible that a conflict or inconsistency will exist between the more general allegation and the specific allegations." (*Perez v. Golden Empire Transit Dist*. (2012) 209 Cal.App.4th 1228, 1235, italics

added.)[13]  "To handle these contradictions, California courts have adopted the principle that specific allegations in a complaint control over an inconsistent general allegation." (*Id*. at pp. 1235-1236.)  "Under this principle, it is possible that specific allegations will render a complaint defective when the general allegations, standing alone, might have been sufficient." (*Id*. at p. 1236.)  Here, the specific allegation about the Project CBD defendants' conduct—i.e., that the Project CBD defendants published the Hemp Oil Hustlers article on the Project CBD website on October 14, 2014 and then further published it on other websites (but not Facebook)—controls over the inconsistent, more general allegation that all of the defendants published negative statements on Facebook over a series of dates prior to October 14, 2014.

Giving the operative pleading its most reasonable interpretation in light of these significant inconsistencies between the more general allegations of conduct asserted in the libel and false light counts and the specific allegations about these defendants' conduct in the pleading document, it becomes clear that the operative pleading, as it stands, cannot be read as alleging any conduct on the part of the Project CBD defendants that supports the plaintiffs' claims for relief for libel or false light.  In fact, the Project CBD defendants *conceded* that this is so in their supplemental briefing:  "Plaintiffs fail to connect Project CBD's purportedly defamatory statements in the October 2014 Report to their specific causes of action for libel and false light.  Instead, as this Court notes, those specific claims only allege false statements made 'between May 1, 2014 and June 1, 2013' and published 'on Facebook.' [Citation.]  The Project CBD Defendants clearly have no connection to allegedly defamatory Facebook posts published several months before Project CBD's Report was even authored, and Plaintiffs' have not argued otherwise."  More importantly, the plaintiffs have not *alleged* otherwise.  Rather, all of the conduct identified in the first amended complaint to support the claims for libel and false light is conduct specifically alleged to have been engaged in *by other defendants*, not the Project CBD defendants, and is conduct that is inconsistent with the

---

[13]  The reference to "a general allegation" here is not a reference to the factual allegations set forth in a pleading under the heading "General Allegations" as opposed to the allegations alleged to support a specific count in the pleading.  Rather, the phrase refers to the nature of the information provided by a particular allegation in a complaint, and whether the information provided in an allegation is more general, conclusory, or states an ultimate fact or a legal conclusion (a more general allegation) or instead, is an allegation that provides more specific details about the conduct or condition being alleged (a more specific allegation).

specific detailed allegations regarding the Project CBD defendants' conduct.[14]

On page 22, the footnote beginning "This case presents," is renumbered as footnote 15.  This will require renumbering of all subsequent footnotes.

There is no change in the judgment.

Appellants' petition for rehearing is denied.


BENKE, Acting P. J.

cc:  All Parties

---

[14]    In contrast to the allegations made to support the claims asserted in counts 1 and 3, which reference solely actions by defendants *other than the Project CBD defendants*, the claim for trade libel asserted in count 2, for example, includes the following allegations that can be read to allege specific conduct on the part of the Project CBD defendants: "Plaintiffs are informed and believe, and based thereon allege, that [all of the defendants], inclusive, and/or each of them, jointly or separately, intentionally, wrongfully, without justification, and without privilege made statements that Plaintiffs' product (RSHO) was dangerous to consume, contained heavy metals, fluorides, chlorides, bromine, and bleach at high concentration[s], that it was not even hemp oil, that it caused the death of a child [known as 'Jaqi Angel' on Facebook]" and "Plaintiffs are informed and believe, and based thereon allege, that Murray's Post and/or DOES 1 through 20's statements were quoted and publicized in a paper by Project CBD, an online information website calling for the legalization of medical marijuana, and Aaron Miguel Cantu, an employee of Project CBD. The 'Hemp Oil Hustlers' article has been reprinted and updated as of November 4, 2014."  (Brackets in original.)  Thus, it is clear that the plaintiffs knew how to reference and rely on the specific factual allegations of the Project CBD defendants' activities to support a particular claim for relief.  As we have explained, they made no similar allegations regarding the conduct of the Project CBD defendants, with respect to the two pleaded causes of action at issue on appeal.

CERTIFIED FOR PUBLICATION

COURT OF APPEAL, FOURTH APPELLATE DISTRICT

DIVISION ONE

STATE OF CALIFORNIA

| | |
|---|---|
| MEDICAL MARIJUANA, INC., et al., | D068523 |
| Plaintiffs and Respondents, | |
| v. | (Super. Ct. No. 37-2014-00036039-CU-DF-CTL) |
| PROJECTCBD.COM et al., | |
| Defendants and Appellants. | |

APPEAL from an order of the Superior Court of San Diego County,

Joel R. Wohlfeil, Judge. Affirmed; remanded for further proceedings.

Greenberg Traurig and Tyler R. Andrews for Defendants and Appellants.

Procopio, Cory, Hargreaves & Savitch, Kendra J. Hall; Phillip E. Koehnke and

Phillip E. Koehnke for Plaintiffs and Respondents.

I.

INTRODUCTION

Defendants ProjectCBD.com (Project CBD), Martin Lee, and Aaron Cantu (jointly

"the Project CBD defendants") appeal from the trial court's order denying their special

motion to strike[3] counts 1 and 3, asserting causes of action for libel and false light, in the first amended complaint filed by plaintiffs Medical Marijuana, Inc. (MMI) and HempMeds PX, LLC (HempMeds) (jointly "the plaintiffs").

On appeal, the Project CBD defendants contend that the trial court incorrectly determined that the plaintiffs demonstrated a probability of prevailing on counts 1 and 3 against the Project CBD defendants. The Project CBD defendants also claim that the trial court erred in concluding that the plaintiffs are not limited public figures, meaning that the plaintiffs would not have to demonstrate that the Project CBD defendants acted with actual malice in publishing an article about the plaintiffs, and/or that the court erred in concluding in the alternative that the plaintiffs demonstrated that the Project CBD defendants acted with actual malice in publishing the article.

We conclude that the trial court's ruling with respect to the Project CBD defendants' anti-SLAPP motion directed at counts 1 and 3 was correct, albeit on grounds different from those relied on by the trial court. We therefore affirm the court's order and remand the matter for further proceedings.

---

[3] Also known as an "anti-SLAPP motion," filed pursuant to Code of Civil Procedure 425.16, subdivision (b)(1).

2

## II.

## FACTUAL AND PROCEDURAL BACKGROUND

### A. *Factual background*[4]

#### 1. *The parties*

Plaintiff MMI holds investments in numerous industrial hemp businesses, including plaintiff HempMeds. HempMeds manufactures and sells RSHO, a product containing cannabidiol (CBD) derived from the industrial hemp plant. MMI also holds interests in KannaLife Sciences, Inc.

According to the first amended complaint, Jason Cranford, another defendant, resigned from KannaLife's Board of Directors and then began competing with MMI and HempMeds by selling CBD products through his Colorado medical marijuana dispensary, Rifle Mountain, LLC (Rifle Mountain), which is also named as a defendant in the case.

Defendant Project CBD is a California nonprofit organization that identifies itself as an organization dedicated to promoting and publicizing research regarding CBD and other components of the cannabis plant. Defendant Martin Lee is Project CBD's founder and director. According to Lee, "Project CBD does not solicit customers anywhere. It sells no products whatsoever." However, a witness declaration presented with respect to the Project CBD defendants' anti-SLAPP motion states that the witness observed Lee

---

4    Because we are reviewing the record on the court's ruling on the Project CBD defendants' anti-SLAPP motion, we take this factual background from the allegations of the operative complaint, as well as from evidence presented to the court with respect to the anti-SLAPP motion.

3

promoting and selling a competing CBD product called " 'Care By Design.' "  On this basis, the plaintiffs assert that "Lee is in the industrial hemp business and uses the auspices of his purported non-profit, Project CBD, for promoting his products in competition with MMI."

Defendant Aaron Cantu wrote an article about MMI, HempMeds, Kannaway and the RSHO product.  The article, originally published on the Project CBD website on October 14, 2014, and "[u]pdated" on November 4, 2014, is titled " 'Hemp Oil Hustlers-A Project CBD Special Report on Medical Marijuana Inc., HempMeds & Kannaway' " (the Hemp Oil Hustlers Article).  Also named as defendants in the case are CannLabs, Inc. (CannLabs); Genifer Murray, identified as the chief executive officer of CannLabs; and Stewart Environmental Consultants, LLC (Stewart Labs).

2.  *The factual allegations in the operative pleading giving rise to the lawsuit*

According to the operative pleading, after Cranford resigned from the board of KannaLife, Cranford, through Rifle Mountain, began to sell CBD products in direct competition with RSHO.  On or around April 26, 2014, Cranford posted on Facebook that he intended to have RSHO tested at a diagnostic lab.  Cranford also allegedly posted that a child had become sickened after having a bad reaction to RSHO.

Rather than have the RSHO sample tested at the facility Cranford identified in his April 26, 2014 Facebook posting, Cranford took the sample to Stewart Labs to be tested for "volatile organic compounds (VOC) and heavy metal concentrations."

According to the pleading, in late May 2014, Stewart Labs released to Cranford a "preliminary report" regarding the RSHO sample.  The plaintiffs allege that after

4

receiving the preliminary report, Cranford immediately released copies of " 'preliminary' test results" on another individual's Facebook page, and posted on his own Facebook page information regarding where the results had been posted.

The plaintiffs further allege that on May 8, 2014, Murray "posted false statements about Plaintiffs and its RSHO on the internet." The plaintiffs incorporated into the operative pleading a quotation of Murray's alleged false statements. Plaintiffs allege that on May 19, 2014, another individual "re-posted" Murray's statements, with very minor alterations to the text. On May 26, 2014, another individual "who followed Cranford's story, posted [on Facebook] the photos of preliminary test results from Stewart [Labs] that Cranford had previously posted." According to the complaint, as a result of Murray and Cranford's Facebook "announcements," "people throughout the world have read and followed the story and re-posted it on their Facebook timelines, further publishing the false statements concerning Plaintiffs."

At some point after the "re-post[ing]" of Murray's statements, Cranford allegedly posted to Facebook a solicitation for contact from individuals who "had suffered negative reactions after taking Plaintiffs' RSHO product."

According to the operative complaint, on May 30, 2014, Stewart Labs published the final test results from its analysis of the RSHO sample that had been submitted to it by Cranford. The plaintiffs allege that "[t]he final results showed significant different reporting values, especially for heavy metals such as lead, molybdenum, nickel, selenium, and silver, among other metals." Despite being aware of the Stewart Labs final test results, on June 1, 2014, Cranford posted a link to a statement written on Facebook

5

by " 'Sarah Hadigan' " who asserted in her statement that her " 'daughter is dead because of this product [i.e., RSHO],' " among other things.

The operative pleading does not allege further conduct by any of the defendants after June 1, 2014, until October 14, 2014, the date on which the plaintiffs allege that the Project CBD defendants "published" the Hemp Oil Hustlers Article on Project CBD's website. In the portion of the first amended complaint in which the plaintiffs set forth the general allegations on which they base their later enumerated claims for relief (i.e., in the general allegations of the pleading), they allege that the Hemp Oil Hustlers Article was written by Cantu and published by Project CBD on its website and then further published on other websites,[5] and that in the Hemp Oil Hustlers Article, the Project CBD defendants "claimed to have evidence that RSHO was contaminated with heavy metals and solvents without verifying the accuracy of the results from Stewart Environmental," and "alleged that multiple people became ill after using RSHO due to heavy metals and other toxins based on Cranford's opinion."

According to the operative complaint, MMI's stock price "has plummeted" ever since the named defendants "made these announcements." Plaintiffs assert that they have been harmed by the defendants' actions "in excess of one hundred million dollars."

---

[5]    It has not been alleged that the Hemp Oil Hustlers Article was published on Facebook.

6

B. *Procedural background*

1. *Trial court proceedings*

On January 16, 2015, the plaintiffs filed their first amended complaint, the operative pleading for purposes of this appeal.[6] The first amended complaint states five pleaded counts against all of the named defendants, including libel (count 1), trade libel (count 2), false light (count 3), negligence (count 4), and intentional infliction of emotional distress (count 5). Attached to the complaint are multiple exhibits.

The first amended complaint recites all of the factual allegations regarding the Project CBD defendants' conduct vis-à-vis the plaintiffs in three paragraphs (paragraphs 50, 51, and 52), which are included under the heading "FACTS COMMON TO ALL CLAIMS."[7] These three paragraphs focus on the Project CBD defendants' publication of the Hemp Oil Hustlers Article.

The Project CBD defendants responded to the complaint by filing an anti-SLAPP motion pursuant to California's anti-SLAPP statute. In response to the anti-SLAPP motion, the trial court issued an order granting the motion in part and denying it in part. Specifically, the court determined that all of the counts alleged against the Project CBD defendants arose from protected activities under the anti-SLAPP statute. The court therefore proceeded to consider whether the plaintiffs had demonstrated a probability of prevailing on their claims against the Project CBD defendants. The trial court determined that the plaintiffs had not demonstrated a probability of prevailing on counts 2, 4 and 5 of

---

[6]     The record on appeal does not include the original complaint.
[7]     We provide the full text of these paragraphs later in this opinion.

the first amended complaint, but had demonstrated a probability of prevailing on counts 1 and 3.

In determining that the plaintiffs had demonstrated a probability of prevailing on counts 1 and 3, the trial court concluded that the "numerous purportedly false statements within the article, coupled with a failure to correctly cite information from sources is sufficient evidence of fault." In response to the Project CBD defendants' argument that the plaintiffs should be considered limited public figures and therefore, should be required to prove actual malice on the part of the Project CBD defendants, the trial court concluded that the plaintiffs could not be considered public figures, and that they thus would not have to prove malice. The court also determined, however, that even if the plaintiffs would have been required to establish malice, the evidence they presented in response to the anti-SLAPP motion was sufficient to support a finding that the Project CBD defendants "engaged in 'unreasonable conduct constituting an extreme departure from the standards of investigation and reporting ordinarily adhered to by responsible publishers.' " Such a finding, the court concluded, would be sufficient to raise a triable issue of fact with respect to the "actual malice" standard.

In granting the Project CBD defendants' anti-SLAPP motion in part and denying it in part, the trial court struck counts 2, 4, and 5 insofar as those counts were asserted against the Project CBD defendants, but left counts 1 and 3 intact.

The Project CBD defendants filed a timely notice of appeal.[8]

2. *Relevant proceedings on appeal*

After the parties completed briefing on appeal and this court began reviewing the record, the court identified a potential issue in the case that the parties had not addressed in their briefing. This court issued a letter to counsel for the parties, seeking supplemental briefing from the parties with respect to this issue. The letter stated in relevant part:

> "The court requests supplemental letter briefs from the parties, as outlined below. The First Amended Complaint in the above-entitled action alleges in paragraphs 50, 51, and 52 the following:
>
> > " '50. Plaintiffs are informed and believe, and based thereon allege, that *on or about October 14, 2014*, Cantu, [b]y and through Lee and Project CBD published an article titled "Hemp Oil Hustlers- A Project CBD Special Report on Medical Marijuana Inc., HempMeds & Kannaway," (hereinafter referred to as "Hemp Oil Hustlers"). This article claimed to have evidence that RSHO was contaminated with heavy metals and solvents without verifying the accuracy of the results from Stewart Environmental. Project CBD also alleged that multiple people became ill after using RSHO due to heavy metals and other toxins based on Cranford's opinion. Lee wrote a forward for Cantu's article, asserting opinions and rumors as fact without proof or citation, and published Cantu's article on his Project CBD website. [See Exhibit M].
> >
> > " '51. Plaintiffs are informed and believe, and based thereon allege, that the Hemp Oil Hustlers article from October 14, 2014, has been republished on at least seventy-eight other websites. [See Exhibit L].

---

[8] The plaintiffs have not appealed that portion of the trial court's order granting the Project CBD defendants' anti-SLAPP motion with respect to counts 2, 4, and 5.

9

" '52. Despite knowledge that the preliminary results were inaccurate, CannLabs, Rifle Mountain, LLC, Murry, Cranford, Project CBD, Cantu, Lee, and/or DOES 1 through 20, inclusive, and/or each of them, jointly or separately continued to publish these results.' (Italics added.)

"In the portion of the First Amended Complaint alleging the cause of action for libel, which the trial court did not strike in response to Project CBD, Aaron M. Cantu, and Martin Lee's (the Project CBD defendants) anti-SLAPP motion, the sole allegation identifying the false statement or statements to support the cause of action provides:

" '59. Plaintiffs are informed and believe, and based thereon allege, that *between May 1, 2014 and June 1, 2014*, CannLabs, Rifle Mountain, LLC, Murry, Cranford, Project CBD, Cantu, Lee, and/or DOES 1 through 20, inclusive, and/or each of them, jointly or separately, published negative statements of fact about Plaintiffs *on Facebook*, which contained untrue and false statements regarding Plaintiff's product, RSHO.' (Italics added.)

"In the portion of the First Amended Complaint alleging the cause of action for false light, which the trial court also did not strike in response to the Project CBD defendants' anti-SLAPP motion, the sole allegation identifying the false statement or statements to support the cause of action provides:

" '90. Plaintiffs are informed and believe, and based thereon allege, that *on or about May 19, 2014*, CannLabs, Rifle Mountain, LLC, Murry, Cranford, Project CBD, Cantu, Lee, and/or DOES 1 through 20, inclusive, and/or each of them, jointly or separately, without Plaintiffs' consent, put Plaintiffs in a false light by writing, publishing, and circulating negative statements about Plaintiffs *on Facebook*, which contained untrue statements of fact regarding Plaintiffs and Plaintiffs' product, RSHO.' (Italics added.)

"These are the only false statements alleged to have been published by the Project CBD defendants in these two causes of action.

"Based on these allegations, it appears that no specific conduct attributed to the Project CBD defendants has been alleged as the basis for the causes of action for libel or false light against the Project CBD defendants. In particular, the conduct from which

10

these causes of action are alleged to arise is limited to statements made between May 1, 2014 and June 1, 2014, and statements made on Facebook. The only statements identified in reference to the Project CBD defendants in the First Amended Complaint, however, are alleged to have been published in October 2014, and are not alleged to have been published on Facebook. (See Exhibit L to the First Amended Complaint.)

"The court therefore requests that the parties respond to the following questions:

"1) Is the First Amended Complaint deficient with respect to alleging the existence of any conduct on the part of the Project CBD defendants to support the causes of action for libel and false light?

"2) Assuming that the First Amended Complaint fails to state a legally sufficient cause of action against the Project CBD defendants for libel or false light because the First Amended Complaint fails to identify *any* conduct on the part of these defendants in setting forth these causes of action, comment on the following potential dispositions of this appeal, and/or provide an alternative proposed disposition:

"(a) This court affirms the trial court's denial of the Project CBD defendants' anti-SLAPP motion with respect to the libel and false light causes of action on the ground that the causes of action do not arise from the defendants' alleged 'protected activity' because *no activity* on the part of these defendants has been alleged as to the libel and false light causes of action (see *Jarrow Formulas, Inc. v. LaMarche* (2003) 31 Cal.4th 728, 733 [in considering an anti-SLAPP motion, the court first decides 'whether the defendant has made a threshold showing that the challenged cause of action is one arising from protected activity']), without prejudice to the Project CBD defendants filing a demurrer or other challenge to the legal sufficiency of the claims against them on remand; or

"(b) This court reverses the trial court's denial of the Project CBD defendants' anti-SLAPP motion with respect to the libel and false light causes of action on the ground that the plaintiffs cannot demonstrate a probability of prevailing on these causes of action against the Project CBD defendants because they cannot demonstrate that the complaint is legally sufficient with respect

11

> to these claims (see *Briggs v. Eden Council for Hope & Opportunity* (1999) 19 Cal.4th 1106, 1122-1123 [in second step of anti-SLAPP motion analysis, court must determine whether the plaintiff has demonstrated a probability of prevailing on the merits by assessing whether the plaintiff has *stated* and substantiated a legally sufficient claim])." (Footnote omitted.)

The parties submitted timely supplemental briefs in which they took opposing positions with respect to both of the court's questions.

III.

DISCUSSION

The Project CBD defendants assert that the trial court erred in failing to strike the plaintiffs' causes of action for libel and false light as pleaded in counts 1 and 3 of the first amended complaint. According to the Project CBD defendants, the court correctly determined that the claims for libel and false light against them arose from protected conduct under the anti-SLAPP statute, but incorrectly determined that the plaintiffs had demonstrated a probability of prevailing on these claims against the Project CBD defendants. The Project CBD defendants also assert that the trial court erred in concluding that the plaintiffs are not limited public figures, meaning that the plaintiffs would not have to demonstrate that the Project CBD defendants acted with actual malice in publishing the Article, and/or that the court erred in concluding in the alternative that the plaintiffs had demonstrated that the Project CBD defendants acted with actual malice.

After reviewing the record, we conclude that the trial court properly declined to strike the plaintiffs' claims for libel and false light against the Project CBD defendants, but on grounds different from the grounds on which the trial court based its order. As we

12

explain, the Project CBD defendants cannot meet their burden to identify any protected activity that forms the basis of the libel and false light claims against them, because the complaint does not allege any activity on the part of the Project CBD defendants to support the libel and false light claims. Thus, the anti-SLAPP statute's protections have not been triggered with respect to the libel and false light claims ostensibly asserted against the Project CBD defendants.

A. *The anti-SLAPP statute and applicable legal standards*

A SLAPP suit is "a meritless lawsuit 'filed primarily to chill the defendant's exercise of First Amendment rights.' " (*Paul v. Friedman* (2002) 95 Cal.App.4th 853, 861, quoting *Wilcox v. Superior Court* (1994) 27 Cal.App.4th 809, 815, fn. 2.) California's anti-SLAPP statute allows a defendant to move to dismiss "certain unmeritorious claims that are brought to thwart constitutionally protected speech or petitioning activity." (*Robinzine v. Vicory* (2006) 143 Cal.App.4th 1416, 1420-1421.) The anti-SLAPP statute provides: "A cause of action against a person arising from any act of that person in furtherance of the person's right of petition or free speech under the United States Constitution or the California Constitution in connection with a public issue shall be subject to a special motion to strike, unless the court determines that the plaintiff has established that there is a probability that the plaintiff will prevail on the claim." (Code Civ. Proc.,[9] § 425.16, subd. (b)(1).)

---

[9] Further statutory references are to the Code of Civil Procedure unless otherwise indicated.

A court's consideration of an anti-SLAPP motion involves a two-pronged analysis. (*Episcopal Church Cases* (2009) 45 Cal.4th 467, 477.) Recently, the Supreme Court has expounded on the standards to be applied in this two-pronged analysis:

> "At the first step, the moving defendant bears the burden of identifying all allegations of protected activity, and the claims for relief supported by them. . . . If the court determines that relief is sought based on allegations arising from activity protected by the statute, the second step is reached. There, the burden shifts to the plaintiff to demonstrate that each challenged claim based on protected activity is legally sufficient and factually substantiated. The court, without resolving evidentiary conflicts, must determine whether the plaintiff's showing, if accepted by the trier of fact, would be sufficient to sustain a favorable judgment. If not, the claim is stricken. Allegations of protected activity supporting the stricken claim are eliminated from the complaint, unless they also support a distinct claim on which the plaintiff has shown a probability of prevailing." (*Baral v. Schnitt* (2016) 1 Cal.5th 376, 396 (*Baral*).)

To make a showing under the first prong, the defendant need not show that the actions it is alleged to have taken were protected as a matter of law, but need only establish a prima facie case that its alleged actions fell into one of the categories listed in section 425.16, subdivision (e).[10] (See *Flatley v. Mauro* (2006) 39 Cal.4th 299, 314.) "[T]he statutory phrase 'cause of action . . . arising from' means simply that the

---

[10] The statute defines " 'act[s] in furtherance of a person's right of petition or free speech' " as including: "(1) any written or oral statement or writing made before a legislative, executive, or judicial proceeding, or any other official proceeding authorized by law, (2) any written or oral statement or writing made in connection with an issue under consideration or review by a legislative, executive, or judicial body, or any other official proceeding authorized by law, (3) any written or oral statement or writing made in a place open to the public or a public forum in connection with an issue of public interest, or (4) any other conduct in furtherance of the exercise of the constitutional right of petition or the constitutional right of free speech in connection with a public issue or an issue of public interest." (§ 425.16, subd. (e).)

14

defendant's act underlying the plaintiff's cause of action must *itself* have been an act in furtherance of the right of petition or free speech." (*City of Cotati v. Cashman* (2002) 29 Cal.4th 69, 78; see also *Kolar v. Donahue, McIntosh & Hammerton* (2006) 145 Cal.App.4th 1532, 1537 [a cause of action arises from an act if that act forms the basis for the cause of action].) A cause of action may be triggered by a protected act but not arise from that act. (*Ibid.*) Thus, the "anti-SLAPP statute's definitional focus is not the form of the plaintiff's cause of action but, rather, the defendant's *activity* that gives rise to his or her asserted liability—and whether that activity constitutes protected speech or petitioning." (*Navellier v. Sletten* (2002) 29 Cal.4th 82, 92 (*Navellier I*).)

Only if the court finds that the defendant has made the required showing, does the burden shift to the plaintiff to demonstrate that "there is a probability that the plaintiff will prevail on the claim." (§ 425.16, subd. (b)(1); *DuPont Merck Pharmaceutical Co. v. Superior Court* (2000) 78 Cal.App.4th 562, 567-568.) "Only a cause of action that satisfies *both* prongs of the anti-SLAPP statute—i.e., that arises from protected speech or petitioning *and* lacks even minimal merit—is a SLAPP, subject to be stricken under the statute." (*Navellier*, *supra*, 29 Cal.4th at p. 89.)

"Review of an order granting or denying a motion to strike under section 425.16 is de novo." (*Soukup v. Law Offices of Herbert Hafif* (2006) 39 Cal.4th 260, 269, fn. 3.) This court considers " '*the pleadings*, and supporting and opposing affidavits . . . *upon which the liability* or defense *is based*.' " (*Ibid.*, italics added, citing § 425.16, subd. (b)(2).) The court does not weigh or compare the evidence, but rather accepts as true the

15

evidence favorable to the plaintiff while evaluating the defendant's evidence " 'only to determine if it has defeated that submitted by the plaintiff as a matter of law.' " (*Ibid.*)

B. *Legal standards regarding the two counts at issue on appeal*[11]

Count 1 asserts a cause of action for libel as to all of the named defendants. " ' "Defamation is an invasion of the interest in reputation.  The tort involves the intentional publication of a statement of fact which is false, unprivileged, and has a natural tendency to injure or which causes special damage."  [Citation.]' . . . Defamatory publications that are made 'by writing, printing, picture, effigy, or other fixed representation to the eye,' are considered libel.  (Civ. Code, § 45.)" (*Burrill v. Nair* (2013) 217 Cal.App.4th 357, 382, disapproved on other grounds in *Baral*, *supra*, 1 Cal.5th at p. 391.)  The tort of defamation " 'involves (a) a publication that is (b) false, (c) defamatory, and (d) unprivileged, and that (e) has a natural tendency to injure or that causes special damage.' " (*Taus v. Loftus* (2007) 40 Cal.4th 683, 720.)  " 'The *sine qua non* of recovery for defamation . . . is the existence of a falsehood.' " (*Baker v. Los Angeles Herald Examiner* (1986) 42 Cal.3d 254, 259.)  " 'The general rule is that the

---

11    As we have explained, only the Project CBD defendants appealed the trial court's ruling on the anti-SLAPP motion, even though the trial court issued a split-outcome ruling—i.e., the court denied the motion with respect to counts 1 and 3, but granted the motion with respect to counts 2, 4 and 5.  Because the plaintiffs did not appeal the portion of the court's ruling granting the anti-SLAPP motion, we are reviewing only that portion of the court's order denying the Project CBD defendants' anti-SLAPP motion—i.e., that portion of the court's order declining to strike counts 1 and 3 as pled in the plaintiffs' first amended complaint.  Therefore, we consider the legal standards for the claims asserted in counts 1 and 3 of the first amended complaint.

16

words constituting an alleged libel must be specifically identified, if not pleaded verbatim, in the complaint.' " (*Vogel v. Felice* (2005) 127 Cal.App.4th 1006, 1017, fn. 3.)

Count 3 asserts a cause of action for false light as to all of the named defendants. "A 'false light' claim, like libel, exposes a person to hatred, contempt, ridicule, or obloquy and assumes the audience will recognize it as such." (*M. G. v. Time Warner, Inc.* (2001) 89 Cal.App.4th 623, 636.)  "A 'false light' cause of action is in substance equivalent to a libel claim, and should meet the same requirements of the libel claim, including proof of malice [where malice is required for the libel claim]." (*Aisenson v. American Broadcasting Co*. (1990) 220 Cal.App.3d 146, 161.)

C. *Analysis*

The trial court determined that the Project CBD defendants had met their burden on the first prong of the anti-SLAPP analysis—i.e., the court concluded that they had demonstrated that the plaintiffs' claims for relief against the Project CBD defendants were based on allegations arising from activities engaged in by the Project CBD defendants that are protected by the statute, specifically, the Project CBD defendants' publication of the Hemp Oil Hustlers Article.  The trial court proceeded to the second step of the anti-SLAPP analysis and determined, with respect to counts 1 and 3, that the plaintiffs had demonstrated a probability of prevailing on these claims.  The court therefore denied the Project CBD defendant's anti-SLAPP motion with respect to counts 1 and 3.

Our independent review of the record, however, reveals that the plaintiffs' asserted claims for relief against the Project CBD defendants in counts 1 and 3 are not based on

17

*any conduct alleged to have been undertaken by the Project CBD defendants*.  The sole allegations referring to the Project CBD defendants in the first amended complaint are the factual allegations found in paragraphs 50, 51, and 52 of the general allegations.  Those paragraphs state the following:

> "50.  Plaintiffs are informed and believe, and based thereon allege, that *on or about October 14, 2014*, Cantu, [b]y and through Lee and Project CBD published an article titled 'Hemp Oil Hustlers- A Project CBD Special Report on Medical Marijuana Inc., HempMeds & Kannaway,' (hereinafter referred to as 'Hemp Oil Hustlers'). This article claimed to have evidence that RSHO was contaminated with heavy metals and solvents without verifying the accuracy of the results from Stewart Environmental. Project CBD also alleged that multiple people became ill after using RSHO due to heavy metals and other toxins based on Cranford's opinion. Lee wrote a forward for Cantu's article, asserting opinions and rumors as fact without proof or citation, and published Cantu's article on his Project CBD website. [See Exhibit M].

> "51.  Plaintiffs are informed and believe, and based thereon allege, that the Hemp Oil Hustlers article from October 14, 2014, has been republished on at least seventy-eight other websites. [See Exhibit L].

> "52.  Despite knowledge that the preliminary results were inaccurate, CannLabs, Rifle Mountain, LLC, Murry, Cranford, Project CBD, Cantu, Lee, and/or DOES 1 through 20, inclusive, and/or each of them, jointly or separately continued to publish these results."[12] (Brackets in original, italics added.)

The factual allegations in paragraphs 50, 51, and 52 are incorporated into each separate count asserted in the first amended complaint, including counts 1 and 3.[13]  We

---

[12]    Exhibit M to the first amended complaint includes the full text of the Article. Exhibit L is a list of websites.

[13]    Both counts 1 and 3 include the following language:  "Plaintiffs re-allege and incorporate by reference the allegations contained in [the preceding paragraphs] above as though fully set forth herein."

18

therefore proceed with the understanding that the first amended complaint may be read as if the text of paragraphs 50, 51, and 52 were included, verbatim, within the paragraphs setting forth the counts identified in the first amended complaint as "FIRST CAUSE OF ACTION  [¶]  (For Libel as to Defendants CannLabs, Rifle Mountain, LLC, Murray, Cranford, Project CBD, Cantu, and Lee)" and "THIRD CAUSE OF ACTION  [¶]  (For False Light as to Defendants CannLabs, Rifle Mountain, LLC, Murray, Cranford Project CBD, Cantu, Lee)."  (Boldface omitted.)

Nevertheless, in the portion of the first amended complaint setting forth count 1, the cause of action for libel, the sole allegation identifying the false statement or statements on which the plaintiffs' claim for libel is based is found in paragraph 59, which provides:

> "59.  Plaintiffs are informed and believe, and based thereon allege, that *between May 1, 2014 and June 1, 2014*, CannLabs, Rifle Mountain, LLC, Murry, Cranford, Project CBD, Cantu, Lee, and/or DOES 1 through 20, inclusive, and/or each of them, jointly or separately, published negative statements of fact about Plaintiffs *on Facebook*, which contained untrue and false statements regarding Plaintiff's product, RSHO."  (Italics added.)

Similarly, in the portion of the first amended complaint asserting a claim for false light, the sole allegation identifying the false statement or statements on which the plaintiffs' claim for false light is based is found in paragraph 90, which provides:

> "90.  Plaintiffs are informed and believe, and based thereon allege, that *on or about May 19, 2014*, CannLabs, Rifle Mountain, LLC, Murry, Cranford, Project CBD, Cantu, Lee, and/or DOES 1 through 20, inclusive, and/or each of them, jointly or separately, without Plaintiffs' consent, put Plaintiffs in a false light by writing, publishing, and circulating negative statements about Plaintiffs *on*

19

*Facebook*, which contained untrue statements of fact regarding Plaintiffs and Plaintiffs' product, RSHO." (Italics added.)

These are the *only* portions of the first amended complaint in which the plaintiffs identify the specific acts (i.e., the purported false statements published by the defendants) underlying the libel and false lights counts/causes of action at issue.[14] Thus, for the libel claim, the alleged activities on the part of any of the named defendants that give rise to the plaintiffs' claims of liability, according to the first amended complaint, is the "publi[cation of] negative statements of fact about Plaintiffs *on Facebook* [*'between May 1, 2014 and June 1, 2014'*], which contained untrue and false statements regarding Plaintiff's product, RSHO." (Italics added.) For the false light claim, alleged activities on the part of any of the named defendants that give rise to the plaintiffs' claims of liability, according to the first amended complaint, is the "writing, publishing, and circulating [of] negative statements about Plaintiffs *on Facebook* [*'on or about May 19, 2014'*], which contained untrue statements of fact regarding Plaintiffs and Plaintiffs' product, RSHO." (Italics added.) However, the first amended complaint specifically alleges that the only time that the Project CBD defendants engaged in any activity related to the plaintiffs was on *October 14, 2014*, and the plaintiffs do not allege that the Project

---

14      In supplemental briefing, the plaintiffs contend that although "[p]aragraphs 59 and 90 again reference certain facts from the incorporated 'Facts Common to All Claims,' there is no indication that the allegations against the Project CBD Defendants were limited to only Facebook posts or to a certain time frame." We disagree. The references to false statements made in the paragraphs following paragraphs 59 and 90 are clearly references to the "statements" identified in paragraphs 59 and 90.

20

CBD defendants published the Hemp Oil Hustler Article on Facebook, but, rather, elsewhere.

Thus, the operative pleading, as it stands, does not allege any conduct on the part of the Project CBD defendants that supports the plaintiffs' claims for relief for libel or false light. The Project CBD defendants concede that this is so in their supplemental briefing: "Plaintiffs fail to connect Project CBD's purportedly defamatory statements in the October 2014 Report to their specific causes of action for libel and false light. . . . The Project CBD Defendants clearly have no connection to allegedly defamatory Facebook posts published several months before Project CBD's Report was even authored, and Plaintiffs' have not argued otherwise." More importantly, the plaintiffs have not *alleged* otherwise. Rather, all of the conduct identified in the first amended complaint to support the claims for libel and false light is conduct alleged to have been engaged in *by other defendants*, not the Project CBD defendants.[15]

---

15    In contrast to the allegations made to support the claims asserted in counts 1 and 3, which reference solely actions by defendants *other than the Project CBD defendants*, the claim for trade libel asserted in count 2, for example, includes the following allegations that can be read to allege specific conduct on the part of the Project CBD defendants: "Plaintiffs are informed and believe, and based thereon allege, that [all of the defendants], inclusive, and/or each of them, jointly or separately, intentionally, wrongfully, without justification, and without privilege made statements that Plaintiffs' product (RSHO) was dangerous to consume, contained heavy metals, fluorides, chlorides, bromine, and bleach at high concentration[s], that it was not even hemp oil, that it caused the death of a child [known as 'Jaqi Angel' on Facebook]" and "Plaintiffs are informed and believe, and based thereon allege, that Murray's Post and/or DOES 1 through 20's statements were quoted and publicized in a paper by Project CBD, an online information website calling for the legalization of medical marijuana, and Aaron Miguel Cantu, an employee of Project CBD. The 'Hemp Oil Hustlers' article has been reprinted and updated as of November 4, 2014." (Brackets in original.) Thus, it is clear that the plaintiffs knew how to reference

21

Given that the first amended complaint does not allege any conduct on the part of the Project CBD defendants giving rise to the claims for liability in the libel and false light counts, there is no activity on the part of the Project CBD defendants, let alone activity that amounts to "protected speech or petitioning" (*Navellier I*, *supra*, 29 Cal.4th at p. 92), that could give rise to the Project CBD's claimed liability for libel or false light as alleged in the first amended complaint. As a result, defendants simply cannot identify any allegations of protected activity that support the libel and false light claims for relief, as is their burden under the first prong of the anti-SLAPP analysis. (See *Baral*, *supra*, 1 Cal.5th at p. 396 ["the moving defendant bears the burden of identifying all allegations of protected activity, *and the claims for relief supported by them*" (italics added)].) Because the relief sought in the libel and false light counts is not based on allegations arising from any activity attributed to the Project CBD defendants, no protected activity on their part supports these claims, and we therefore do not reach the second step of the anti-SLAPP analysis. (See *ibid.* [only "[i]f the court determines that relief is sought based on allegations arising from activity protected by the statute" is the "second step . . . reached"].)[16]

_____

and rely on the specific factual allegations of the Project CBD defendants' activities to support a particular claim for relief. As we have explained, they made no similar allegations regarding the conduct of the Project CBD defendants, with respect to the two pleaded causes of action at issue on appeal.

[16] This case presents a unique circumstance in which the failure of the plaintiff to state a legally sufficient claim against the defendant requires a determination at the *first* step of the anti-SLAPP motion analysis, where the defendant bears the burden of identifying "all allegations of protected activity, and the claims for relief supported by them." (*Baral*, *supra*, 1 Cal.5th at p. 396.) This is because the insufficiency of the claims

22

It would be inappropriate for us to insert into a pleading claims for relief based on allegations of activities that the plaintiffs simply have not identified, even if the parties suggest on appeal how the plaintiffs might have intended to frame those claims and/or attempt to identify the specific conduct or assertions of statements alleged to be false on which the plaintiffs intended to base such claims for relief.[17] It is not our role to engage in what would amount to a redrafting of the first amended complaint in order to read that document as alleging conduct that supports a claim that has not in fact been specifically alleged, and then assess whether the pleading that we have essentially drafted could survive the anti-SLAPP motion directed at it. The anti-SLAPP statute operates in a very specific way, permitting a court to strike from a complaint only "[a] cause of action against a person arising from any act of that person in furtherance of the person's right of

against the Project CBD defendants arises as a result of the complete failure of the first amended complaint to allege any conduct on the part of this particular set of defendants to support the plaintiffs' claims for relief in the counts at issue. As a result, the defendants cannot identify protected activity on their part supporting the claim that would trigger the anti-SLAPP statute's protection. We can imagine, however, that in a more typical scenario, the plaintiff will have identified specific conduct on the part of the defendant at issue, and that the identified conduct may be determined to be either "protected activity" or "unprotected activity" for purposes of the anti-SLAPP analysis, thereby triggering application of the second prong analysis. In such an instance, is it also possible that the conduct identified and determined to be "protected activity" does not establish a sufficient claim for relief as a matter of law. In such a circumstance, the appropriate disposition would be a determination that *the plaintiff* has not met his or her burden to demonstrate a probability of success on the merits of the claim, and the anti-SLAPP motion would be properly granted as to that claim. (See *Vogel v. Felice*, *supra*, 127 Cal.App.4th at pp.1018-1019 [if the pleadings are not adequate to support a cause of action, the plaintiff has failed to carry the plaintiff's burden in opposing an anti-SLAPP motion].)

[17] Our decision not to attempt to reimagine the operative complaint is particularly appropriate given the fact that the parties disagree as to what the plaintiffs intended to, and did in fact, allege in that pleading.

23

petition or free speech under the United States Constitution or the California Constitution in connection with a public issue" when the plaintiff cannot establish a probability of prevailing on the claim. (§ 425.16, subd. (b)(1).) The anti-SLAPP statute's stark remedies come into play to bring an end solely to "meritless" claims filed primarily to chill the defendant's exercise of his or her First Amendment rights (see *Paul v. Friedman*, *supra*, 95 Cal.App.4th at p. 861). Where, as here, the operative complaint alleges no act on the part of the moving defendants in support of the claim or claims for relief that those defendants seek to strike from that complaint, the defendants are not entitled to strike those claims for relief pursuant to the anti-SLAPP statute, although they may have other remedies available to them to address deficiencies in the pleading.

We conclude that the appropriate course of action is to affirm the denial of the anti-SLAPP motion with respect to counts 1 and 3, given that *no protected or unprotected activity* on the part of the Project CBD defendants has been alleged to support the claims for relief asserted in these counts, and to allow the parties, themselves, to correct the course of this litigation in the trial court if they determine that such a course correction is necessary.[18]

---

[18] Specifically, this opinion is not intended to preclude the Project CBD defendants from demurring to the remaining counts of the first amended complaint on the ground that it fails to state a claim against them based on the insufficiencies in the libel and false light counts identified here.

IV.

DISPOSITION

The trial court's order denying the Project CBD defendants' anti-SLAPP motion with respect to counts 1 (libel) and 3 (false light) is affirmed.  The matter is remanded to the trial court for further proceedings.


                                                                AARON, J.

WE CONCUR:

BENKE, Acting P. J.

PRAGER, J.*

---

*        Judge of the San Diego Superior Court, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.