Filed 10/3/25  Ramakrishnan v. Long Beach Memorial Medical Center CA4/3

## NOT TO BE PUBLISHED IN OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b). This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FOURTH APPELLATE DISTRICT

DIVISION THREE

| | |
|---|---|
| RAVICHANDRAN RAMAKRISHNAN,<br><br>  Plaintiff and Appellant,<br><br>v.<br><br>LONG BEACH MEMORIAL MEDICAL CENTER,<br><br>  Defendant and Respondent. | G063995<br><br>(Super. Ct. No. 30-2023-01338944)<br><br>O P I N I O N |

Appeal from an order of the Superior Court of Orange County, Andre De La Cruz, Judge. Affirmed.

Ravichandran Ramakrishnan, in pro. per., for Plaintiff and Appellant.

Godes & Preis, Joseph M. Preis and Oliver B. Dreger for Defendant and Respondent.

\*      \*      \*

Plaintiff and appellant Ravichandran Ramakrishnan (Appellant) was a medical resident at the University of California, Irvine (UCI) in the Radiation Oncology Residency Training Program (the Program) between 2018 and 2022. As part of his training, he completed a clinical rotation at defendant and respondent Long Beach Memorial Medical Center (Long Beach). After he was dismissed from the Program, he filed multiple legal actions, including this one. In this lawsuit, as relevant to Long Beach, he alleged three causes of action for retaliation, all of which related to the "negative feedback" Long Beach staff provided to UCI.

Long Beach brought a motion to strike pursuant to Code of Civil Procedure section 425.16 (the anti-SLAPP statute).[1] The trial court concluded that Appellant's claims arose from protected activity. The court also ruled that Appellant could not establish a possibility of prevailing, because, among other things, his claims were time-barred. We agree with the trial court as to both prongs of the anti-SLAPP analysis, and according, we affirm the order.

STATEMENT OF FACTS AND PROCEDURAL HISTORY

A more detailed history of the facts of can be found in the companion case, *Ramakrishnan v. Stamos et al.* (G063698, Oct. 3, 2025) [nonpub. opn.] (*Stamos*).) For purposes of this appeal, we focus on the facts relevant to Long Beach.

As we noted in *Stamos,* Appellant has once again provided a statement of facts that views the world through lenses designed to highlight any fact he deems favorable to him, while disregarding contrary facts. This is not permissible in any appeal. (*Slone v. El Centro Regional Medical Center*

---

[1] Subsequent statutory references are to the Code of Civil Procedure unless otherwise indicated.

(2024) 106 Cal.App.5th 1160, 1173.) While we exercise our discretion to review this matter on the merits rather than deem Appellant's arguments waived, we disregard all "factual" statements that are merely self-serving. And we disregard completely purported statements of fact that lack record references. (See Cal. Rules of Court, rule 8.204(a)(1)(C); *Schubert v. Reynolds* (2002) 95 Cal.App.4th 100, 109.)

*A. Summary of Relevant Facts*

UCI's Program is governed by an accreditation body called the Accreditation Council for Graduate Medical Education (ACGME). Accredited programs employ and train residents. Appellant was employed as a resident by UCI beginning in 2018.

In December 2018, ACGME conducted a site visit. During a discussion with the residents in the Program, Appellant gave what he refers to as "honest critical feedback about the Program, specifically the lack of residents' inclusion in treatment planning." Appellant had previously e-mailed the program with the same concern and "regularly voiced this concern at meetings with program leadership." Appellant does not allege that Long Beach ever had knowledge of this complaint.

Although Appellant initially received some positive feedback, his performance reviews became more and more negative as time went on. The complaints were not primarily about his clinical skills, but about his conduct, including unprofessional behavior, causing discomfort among staff with the use of racial slurs, and other issues, such as "white coat dirty, dining etiquette, manners, appearance." Later, complaints about him included his propensity to behave in a "confrontational" manner, to make "individuals cry," to be "verbally abusive," have "an outburst with a female patient," and make residents and staff "fearful of being honest with [him]."

3

According to Appellant, this was all part of a grand scheme of retaliation because he had given rather benign feedback to ACGME about residents' inclusion in treatment planning. According to the Program, it was a concerning pattern of conduct that it spent years trying to remedy. (See *Stamos, supra,* G063698.)

As part of Appellant's training, he completed a rotation at Long Beach from March 2019 to June 2019. While at Long Beach, his supervisor was Dr. Linda Chan,[2] who was allegedly a member of the Program's faculty. Appellant's complaint alleged that the Program "solicit[ed]" Chan to provide false negative feedback about Appellant.

The "false negative feedback" alleged in the complaint included the following: "Dr. Linda Chan wrote to the Program on June 11th, 2019 in an email, shortly after the completion of the meeting with the Plaintiff to claim that she had provided several items of critical feedback including that the Plaintiff spent too much time working with Dr. Nisar Syed and that she had instructed the Plaintiff to not do so at the start of the rotation: 'I also reminded him at the BEGINNING of the rotation that one way I suggested to

---

[2] Appellant claims the complaint adequately alleged Chan was a Long Beach employee, but we disagree. The complaint alleged: "Defendant, LINDA CHAN, MD, serves as faculty at Long Beach Memorial Medical Center and was supposed to directly supervise Plaintiff while he rotated there." This simply does not allege an employment relationship, and there is no amount of liberal construction or context that changes this. It was not Long Beach's burden to establish that Chan was not an employee—it was Appellant's burden to properly allege an employment relationship. Appellant's declaration as to his "belief" that Chan was employed by Long Beach does not change matters, nor does his inclusion of a website printout that indicates Chan is "affiliated" with Long Beach. Affiliation, for a doctor, can have more than one meaning. Ultimately, however, whether Chan was or was not an employee of Long Beach will not alter the outcome of this case.

negate this comment was to spend half the rotation on a 'brachy focus' with Dr. Syed . . . .'"

"On July 16th, 2019, Dr. Linda Chan, after speaking with [the Program director] Dr. Chen on a phone call, wrote a second email falsely claiming that the 6/11/19 meeting with the Plaintiff was an end of rotation meeting and falsely alleged more negative feedback."

"[O]n August 6th, 2019, Dr. Chan and the Plaintiff were finally able to meet to do an End of Rotation feedback meeting despite the rotation being completed at the end of June 2019. During the course of the meeting Dr. Chan brought up a variety of new allegations."

"On July 23rd, 2019, Dr. Linda Chan filed an official evaluation via the New Innovations system (electronic system where physicians and staff can submit evaluations). In this evaluation, she claimed that Plaintiff failed to meet the goals and objectives of the rotation despite not providing goals and objectives for the rotation and only working with Plaintiff for a total of seven days over a four month rotation (several of those only half-days.)"

"Dr. Chan's false negative assessments were used as the pretext to issue a Letter of Probation and ultimately to terminate the Plaintiff from his position."

In August 2019, after his Long Beach rotation was complete, Appellant complained to ACGME that the Program failed to perform required evaluations or provide him with access to evaluations. He also complained about the lack of faculty supervision, specifically, that Chan, a member of the Program faculty, was not sufficiently present to provide him with instruction or supervision. There is no allegation that Long Beach had any knowledge of this complaint.

In February 2020, in response to a grievance filed by Appellant internally at UCI, Long Beach forwarded a response from Chan to UCI. Appellant did not allege the contents of this e-mail. The complaint also does not allege any further involvement by Long Beach in this matter.

*B. Relevant Procedural History*

Appellant filed the instant complaint on July 26, 2023. Named as defendants were UCI, Long Beach, and 10 individual defendants. Three retaliation claims were alleged against Long Beach: (1) Violation of the California Whistleblower Protection Act, Government Code section 8547 et. seq.; (2) Violation of Health and Safety Code section 1278.5; and (3) Violation of Labor Code section 1102.5. Long Beach filed the instant anti-SLAPP motion seeking to strike the complaint in its entirety. After briefing, the trial court granted the anti-SLAPP motion in its entirety.

Appellant now appeals.

DISCUSSION

I.

ANTI-SLAPP STATUTORY FRAMEWORK AND STANDARD OF REVIEW

"The anti-SLAPP statute states: 'A cause of action against a person arising from any act of that person in furtherance of the person's right of petition or free speech under the United States Constitution or the California Constitution in connection with a public issue shall be subject to a special motion to strike, unless the court determines that the plaintiff has established that there is a probability that the plaintiff will prevail on the claim.' [Citation.] The purpose of the anti-SLAPP statute is to dismiss meritless lawsuits designed to chill the defendant's free speech rights at the earliest stage of the case. [Citations.] The statute is to 'be construed broadly.'" (*Timothy W. v. Julie W.* (2022) 85 Cal.App.5th 648, 657.)

6

As relevant here, section 425.16, subdivision (e) defines an "'act in furtherance of a person's right of petition or free speech'" as: "(1) any written or oral statement or writing made before a legislative, executive, or judicial proceeding, or any other official proceeding authorized by law, (2) any written or oral statement or writing made in connection with an issue under consideration or review by a legislative, executive, or judicial body, or any other official proceeding authorized by law . . . ."

The anti-SLAPP analysis involves two steps. "At the first step, the moving defendant bears the burden of identifying all allegations of protected activity, and the claims for relief supported by them. When relief is sought based on allegations of both protected and unprotected activity, the unprotected activity is disregarded at this stage. If the court determines that relief is sought based on allegations arising from activity protected by the statute, the second step is reached. There, the burden shifts to the plaintiff to demonstrate that each challenged claim based on protected activity is legally sufficient and factually substantiated." (*Baral v. Schnitt* (2016) 1 Cal.5th 376, 396.) In deciding whether the plaintiff's cause of action is subject to an anti-SLAPP motion, the court "shall consider the pleadings, and supporting and opposing affidavits stating the facts upon which the liability or defense is based." (§ 425.16, subd. (b)(2).)

"'On appeal, we review the trial court's decision de novo, engaging in the same two-step process to determine, as a matter of law, whether the defendant met its initial burden of showing the action is a SLAPP, and if so, whether the plaintiff met its evidentiary burden on the second step.'" (*Sheley v. Harrop* (2017) 9 Cal.App.5th 1147, 1162.)

## II.

### PROTECTED ACTIVITY

Long Beach was first required to establish that the challenged claims arise from protected activity. (*Baral v. Schmitt, supra,* 1 Cal.5th at p. 384.) "'The moving defendant's burden is to demonstrate that the act or acts of which the plaintiff complains were taken "in furtherance of the [defendant]'s right of petition or free speech under the United States or California Constitution in connection with a public issue," as defined in the statute.'" (*Jarrow Formulas, Inc. v. LaMarche* (2003) 31 Cal.4th 728, 733.)

"[T]he moving defendant must identify the acts alleged in the complaint that it asserts are protected and what claims for relief are predicated on them." (*Bonni v. St. Joseph Health System* (2021) 11 Cal.5th 995, 1010 (*Bonni*).)

Although it was far from clear based on the inartful drafting of the complaint, all of Appellant's claims against Long Beach appear to arise from the feedback that Chan provided to UCI about Appellant. The only other act is Long Beach's response to UCI's request for information as part its investigation of Appellant's internal complaint.

Appellant argued that he successfully alleged an unprotected "conspiracy" between Long Beach and the other defendants to retaliate against him. There is no conspiracy cause of action in the complaint; the only possible relevant allegation is included as part of the boilerplate language in the complaint's introductory language: "Plaintiff is informed and believes, and thus alleges, that Defendants knowingly and willfully acted in concert, conspired together and agreed among themselves to enter into a combination and systemized campaign of activity to cause the injuries and damages hereinafter alleged, and to otherwise consciously and/or recklessly act in

8

denigration of Plaintiff's rights, and the trust placed by Plaintiff in each of said Defendants, said acts being negligently and/or intentionally inflicted." This does not adequately plead a conspiracy, nor did plaintiff actually plead a cause of action for conspiracy.

Appellant's failure to adequately plead facts supporting a conspiracy is fatal to this entire line of argument. The anti-SLAPP analysis depends on identifying the "claim for relief" pleaded in the complaint. (*Bonni, supra,* 11 Cal.5th at p. 1010.) Appellant offers no authority whatsoever for the proposition that he can identify unpleaded claims for relief lurking somewhere in his complaint and attempt to use them to defeat an anti-SLAPP motion. Indeed, case law prohibits exactly what he is attempting to do.

In *Medical Marijuana, Inc. v. ProjectCBD.com* (2016) 6 Cal.App.5th 602, the plaintiff sued Project CBD and other defendants for several causes of action, including libel and false light. (*Id.* at p. 608.) The complaint included factual allegations that Project CBD published false statements in October 2014. (*Id.* at pp. 610–611.) The portion of the complaint that specifically alleged libel and false light, however, limited these causes of action to different statements published in May and June 2014. (*Id.* at p. 611.) The Project CBD defendants filed an anti-SLAPP motion to strike the libel and false light causes of action alleged against them. (*Id.* at pp. 605–606.)

On appeal, the court held the anti-SLAPP motion should be denied due to the Project CBD defendants' failure to meet their burden under the first prong. Only the general factual allegations of the complaint referred to the Project CBD defendants, but the portions of the complaint setting forth the specified causes of action did not "allege any conduct on the part of the

9

Project CBD defendants giving rise to the claims for liability in the libel and false light counts." (*Id*. at pp. 616–619, 620.) Thus, there was "no activity on the part of the Project CBD defendants, let alone activity that amounts to 'protected speech or petitioning.'" (*Id*. at p. 620.) The court stated it could not "engage in what would amount to a redrafting of the [complaint] in order to read that document as alleging conduct that supports a claim that has not in fact been specifically alleged, and then assess whether the pleading that we have essentially drafted could survive the anti-SLAPP motion directed at it." (*Id*. at p. 621.)

The same is true here. We will not read into the complaint a civil conspiracy cause of action based on a single paragraph of boilerplate pleading. "[T]he issues in an anti-SLAPP motion are framed by the pleadings." (*Paulus v. Bob Lynch Ford, Inc.* (2006) 139 Cal.App.4th 659, 672.) If Appellant had wished to attempt to plead a civil conspiracy claim, he was free to do so. He did not, and we will not redraft his complaint to include a cause of action that is simply not there.

As to the claims at issue here in the pleaded counts for retaliation, which relate to Chan's negative feedback and Long Beach's reply to UCI's investigation, all of these acts constituted protected activity under section 425.16, subdivision (e)(2) as a "written or oral statement or writing made in connection with an issue under consideration or review by a legislative, executive, or judicial body, or any other official proceeding authorized by law," or under section 425.16, subdivision (e)(4), as "other conduct in furtherance of . . . the constitutional right of free speech in connection with a public issue or an issue of public interest."

As to the negative feedback, first, it is well established that "statements made during and in connection with peer review proceedings and

10

disciplinary reports filed with official bodies — do qualify as protected activity" while discipline imposed does not. (*Bonni, supra,* 11 Cal.5th at p. 1004.) "Because peer review proceedings are official proceedings, any statements in connection with issues considered in such proceedings — such as criticism of a doctor's competence supplied to a body reviewing his or her hospital privileges — are protected activity under the anti-SLAPP law. [T]his result reflects a core function of the anti-SLAPP statute in hospital peer review cases. To adequately protect patient welfare, the system depends on the ability of those with expertise to speak frankly about the competence of medical professionals without fear of retribution." (*Id.* at p. 1016.)

The allegations regarding Chan's statements were "negative feedback" during a physician evaluation process, which fall squarely within the bounds of protected activity under both section 425.16, subdivisions (e)(2) and (e)(4). "A claim may be struck under the anti-SLAPP statute 'only if the speech or petitioning activity *itself* is the wrong complained of, and not just evidence of liability or a step leading to some different act for which liability is asserted.'" (*Wilson v. Cable News Network, Inc.* (2019) 7 Cal.5th 871, 890.) Here, there are no other acts. The only acts Long Beach is alleged to have been directly involved in were the feedback by Chan and the response to the investigation.

As to the communications between Long Beach and UCI, those were also protected activity. Internal investigations by state entities are official proceedings within the meaning of the anti-SLAPP law. (*Jeffra v. California State Lottery* (2019) 39 Cal.App.5th 471, 482.) UCI, a state entity, contacted Long Beach for information regarding an internal investigation based on a complaint by Appellant. Whatever information Long Beach provided constituted a protected response.

11

Appellant is correct that the anti-SLAPP statute does not often apply to cases of retaliation and discrimination. But it is important to note "that allegations of retaliatory . . . motive do not categorically remove retaliation . . . claims from the ambit of an anti-SLAPP motion. Such claims . . . are 'necessarily *also* based on the [defendant's] alleged acts — that is, the various outward "manifestations" of the [defendant's] alleged wrongful intent.' [Citation.] Notwithstanding assertions of an illicit motive, '[i]f the acts alleged in support of the plaintiff's claim are of the sort protected by the anti-SLAPP statute, then anti-SLAPP protections apply.'" (*Bonni, supra,* 11 Cal.5th at p. 1008.) Long Beach has satisfied its burden under the first prong.

III.

MINIMAL MERIT

Once the defendant has satisfied the first prong of the anti-SLAPP analysis, the burden shifts to the plaintiff to demonstrate minimal merit. At this stage, "'"[t]he court does not weigh evidence or resolve conflicting factual claims. Its inquiry is limited to whether the plaintiff has stated a legally sufficient claim and made a prima facie factual showing sufficient to sustain a favorable judgment. It accepts the plaintiff's evidence as true, and evaluates the defendant's showing only to determine if it defeats the plaintiff's claim as a matter of law."'" (*Wilson v. Cable News Network, Inc.* (2019) 7 Cal.5th 871, 891.) This is not a high bar.

In this case, however, Appellant cannot clear it. In addition to myriad problems of demonstrating legal "retaliation" by a nonemployer, Appellant has a more fundamental problem. He filed the instant case on July 26, 2023, approximately three and a half years after Long Beach's last involvement in this case (its response to UCI's query regarding its internal

12

investigation) in February 2020. The complaint does not allege Long Beach took any action thereafter.

As we noted above, Appellant pleaded three separate causes of action. The first was under Government Code section 8547.8, subdivision (c), the California Whistleblower Protection Act (CWPA). The statute of limitations under the CWPA is one year because it carries a mandatory penalty. (Gov. Code, § 8547.10, subd. (c); § 340.) Appellant's complaint was filed after the statute of limitations had expired.

The same is true for Appellant's second cause of action under Health and Safety Code section 1278.5. That section states: "(3) A violation of this section *shall* be subject to a civil penalty of not more than twenty-five thousand dollars ($25,000)." (Health & Saf. Code, § 1278.5, subd. (b)(3), italics added.) The same one-year statute of limitations applies, and Appellant's complaint was filed too late.

The applicable statute of limitations under Labor Code section 1102.5 appears to be three years as a statutory claim. Again, Appellant's complaint was also filed outside the applicable statute of limitations.

Because all of Appellant's pleaded claims were filed after the statute of limitations had expired, he cannot demonstrate the minimal merit necessary to proceed.

## DISPOSITION

The trial court's order granting Long Beach's anti-SLAPP motion is affirmed. Pursuant to section 425.16, subdivision (c)(1), Long Beach is entitled to its attorney fees on appeal. It may bring the appropriate motion in the trial court. Long Beach is also entitled to its costs on appeal.

MOORE, ACTING P. J.

WE CONCUR:

SANCHEZ, J.

SCOTT, J.