Filed 3/20/20

CERTIFIED FOR PUBLICATION

COURT OF APPEAL, FOURTH APPELLATE DISTRICT

DIVISION ONE

STATE OF CALIFORNIA

| | |
|---|---|
| MEDICAL MARIJUANA, INC., et al., | D074755 |
| Plaintiffs and Respondents, | |
| v. | (Super. Ct. No. 37-2014-00036039-CU-DF-CTL) |
| PROJECTCBD.COM et al., | |
| Defendants and Appellants. | |

APPEAL from an order of the Superior Court of San Diego County, Joel R. Wohlfeil, Judge. Reversed.

Greenberg Traurig and Tyler R. Andrews for Defendants and Appellants.

Procopio, Cory, Hargreaves & Savitch, Kendra J. Hall and Michael R. Kiesling for Plaintiffs and Respondents.

I.

INTRODUCTION

This case arises from the publication of an article regarding the safety of a cannabidiol (CBD) product, Real Scientific Hemp Oil (RSHO), sold by plaintiffs Medical Marijuana, Inc. (MMI) and HempMeds PX, LLC (HempMeds) (jointly the plaintiffs). The plaintiffs contend that the article contains false information about RSHO and that the

named defendants who were involved in the publication of the article, including ProjectCBD.com (Project CBD), the website entity on which the article was published, Martin Lee, the founder of ProjectCBD.com, and Aaron Miguel Cantu, the author of the article (jointly "the Project CBD defendants"), should be held liable for libel, false light, and unfair competition due to their publication of the article.[1]

The Project CBD defendants appeal from the trial court's order denying their special motion to strike the three causes of action asserted in the second amended complaint. The Project CBD defendants contend that the trial court erred in denying their motion because the plaintiffs failed to demonstrate a probability of prevailing on their claims.

We conclude that the trial court erred in determining that the plaintiffs have demonstrated a probability of prevailing on the merits of their claims. We therefore reverse the trial court's order and remand the matter with directions to enter an order granting the Project CBD defendants' anti-SLAPP motion.

_____

[1]    In a prior appeal, *Medical Marijuana, Inc. v. ProjectCBD.com* (2016) 6 Cal.App.5th 602 (*Medical Marijuana*), the Project CBD defendants appealed the trial court's denial of their anti-SLAPP motion with respect to the first amended complaint. (*Id.*, at p. 606.) We affirmed the trial court's denial, on the ground that the allegations of the relevant causes of action did not include any conduct on the part of the Project CBD defendants, and in fact specifically excluded the publication of the Article by limiting the dates on which conduct underlying the causes of action were alleged to have occurred. The first amended complaint thus failed to state any claims at all as to the Project CBD defendants; consequently, there were no claims alleged against the Project CBD defendants that could be stricken from the complaint pursuant to their anti-SLAPP motion. (*Id.* at p. 621.)

2

II.

FACTUAL AND PROCEDURAL BACKGROUND

A. *Factual background*[2]

   1. *The parties involved in this appeal*

Plaintiff MMI is an Oregon corporation, doing business in California. Plaintiff HempMeds is a California limited liability company and a wholly owned subsidiary of MMI. HempMeds manufactures and sells RSHO, which contains CBD derived from the hemp plant. MMI also holds interests in an entity called KannaLife Sciences, Inc. (KannaLife), which has its principal place of business in the State of New York.

Defendant Project CBD is registered as a California nonprofit C-corporation, formed "for the public purpose of education regarding research into the medical utility of cannabidiol (CBD) and other components of the cannabis plant." Defendant Martin Lee is Project CBD's founder. Defendant Aaron Miguel Cantu is the author of Hemp Oil Hustlers: A Project CBD Special Report on Medical Marijuana Inc., HempMeds & Kannaway ("the Hemp Oil Hustlers Article" or "the Article"), which was published on the Project CBD Web site. The allegations of the second amended complaint are based on the publication of this article.

---

[2]    Because we are reviewing the record on the court's ruling on the Project CBD defendants' anti-SLAPP motion made in response to the second amended complaint, we take this factual background from the allegations of the operative complaint, as well as from evidence presented to the court with respect to this anti-SLAPP motion.

2.  *The factual allegations in the operative pleading giving rise to the lawsuit*

According to the operative pleading, Jason Cranford was previously a board member of KannaLife.  In late March 2014, Cranford resigned from the board of KannaLife and began to sell CBD products in direct competition with plaintiffs' product, RSHO, through a medical marijuana dispensary that he owns and operates called Rifle Mountain, LLC.

The second amended complaint alleges that on or around April 26, 2014, Cranford posted on Facebook that he intended to have RSHO tested at a diagnostic lab.  Cranford also allegedly posted on Facebook that a child had become ill after having a bad reaction to RSHO.

Rather than having the RSHO sample tested at the facility that Cranford identified in his April 26, 2014 Facebook posting, Cranford is alleged to have taken the sample to Stewart Environmental Consultants, LLC (Stewart Labs) to be tested for "volatile organic compounds and heavy metal concentrations."  According to the pleading, in late May 2014, Stewart Labs released to Cranford a "preliminary report" regarding the RSHO sample.  The plaintiffs allege that after receiving this preliminary report, Cranford "released copies of 'preliminary' test results" from Stewart Labs's testing.[3]

---

3    The second amended complaint suggests that Cranford "released" copies of these " 'preliminary' test results from Stewart" by stating in a Facebook post that the results had been posted on someone else's Facebook page.

4

According to the operative complaint, on May 30, 2014, Stewart Labs "published the complete and final test results" from its analysis of the "purported RSHO sample" that Cranford had submitted. The plaintiffs allege that "[t]he final results showed significantly different reporting values than the preliminary results, especially for heavy metals such as lead, molybdenum, nickel, selenium, and silver, among others." The plaintiffs further allege that despite being aware of the Stewart Labs final test results, on June 1, 2014, Cranford posted a link to a statement written on Facebook by " 'Sarah Hadigan' " who asserted that her " 'daughter is dead because of this product[, i.e., RSHO].' "

The plaintiffs allege that in early June 2014, Stewart Labs stated in an e-mail "that the preliminary test results published by Cranford were not accurate, [and] that the sample was possibly contaminated as it had been handled by three different custodians without a proper chain of custody . . . and should not have been published."

According to the operative pleading, on October 14, 2014, the Project CBD defendants "published" defendant Cantu's Hemp Oil Hustlers Article on Project CBD's Web site. In a section titled "FACTS COMMON TO ALL CLAIMS" (boldface & underscoring omitted), the plaintiffs allege the following with respect to the Hemp Oil Hustlers Article:

> "That article claimed the existence of evidence that RSHO was contaminated with heavy metals and solvents without verifying the accuracy of the testing results from Stewart. PROJECT CBD also alleged that multiple people became ill after using RSHO due to heavy metals and other toxins based on Cranford's opinion. LEE wrote a forward for the Hemp Oil Hustlers Article, asserting

5

opinions and rumors as fact without proof or citation, and published the article on the PROJECT CBD website."

The operative complaint cites to "Exhibit 'M' attached hereto" and states that "the full content of [this exhibit] is incorporated herein by this reference." "Exhibit 'M' " is a full copy of the Hemp Oil Hustlers Article, which includes a one-page "Forward by Project CBD," (boldface omitted) signed by Lee, and the article itself, which comprises 24 and 1/2 pages of single-spaced text, plus an additional 4 and 1/2 pages of endnotes.

According to the operative complaint, "as a proximate result of the publication and republication of the Hemp Oil Hustlers Article" by the Project CBD defendants, MMI's "stock price and sales fell dramatically." The plaintiffs assert that they have "suffered damages" as a "direct and proximate result of the acts and omissions" of the Project CBD defendants.

B.  *Procedural background*

On January 16, 2015, the plaintiffs filed their first amended complaint in which they named the Project CBD defendants as defendants.[4] The first amended complaint stated five pleaded counts against all of the originally-named defendants, including libel (count 1), trade libel (count 2), false light (count 3), negligence (count 4), and intentional interference with prospective business advantage (count 5) and had multiple exhibits

---

4     As occurred in the prior appeal, the record does not contain a copy of the original complaint filed in this action.  (See *Medical Marijuana*, *supra*, 6 Cal.App.5th at p. 609, fn. 4.)

6

attached.[5] The factual allegations regarding the Project CBD defendants, which were included only in the general allegations of the first amended complaint and not in any of the causes of action alleged against the various defendants, were essentially identical to those currently alleged in the second amended complaint.

The Project CBD defendants filed an anti-SLAPP motion pursuant to California's anti-SLAPP statute. The trial court issued an order granting the motion in part and denying it in part. Specifically, the trial court determined that all of the counts alleged against the Project CBD defendants arose from protected activity under the anti-SLAPP statute, but that the plaintiffs had demonstrated a probability of prevailing on counts 1 and 3 only, and had not demonstrated a probability of prevailing on counts 2, 4 and 5. (See *Medical Marijuana*, *supra*, 6 Cal.App.5th at p. 609.) The trial court therefore struck counts 2, 4, and 5 insofar as those counts were asserted against the Project CBD defendants, but left counts 1 and 3 intact. (*Id.* at p. 610.)

The Project CBD defendants appealed the trial court's order. (*Medical Marijuana*, *supra*, 6 Cal.App.5th at p. 610.) In reviewing the record on appeal, this court noted that although the plaintiffs had alleged certain conduct by the Project CBD defendants in the "general allegations" of the first amended complaint, the plaintiffs had failed to identify in their causes of action for libel and false light any specific conduct or activities on the part of any of the Project CBD defendants. (*Id.* at pp. 616–619.) Because this court

---

5     The originally-named defendants included Genifer Murray, Cranford, CannLabs, Inc., Rifle Mountain, LLC, and Stewart Labs.

7

determined that the first amended complaint "[did] not allege *any conduct* on the part of the Project CBD defendants giving rise to the claims for liability in the libel and false light counts," we concluded that "there is no activity on the part of the Project CBD defendants, let alone activity that amounts to 'protected speech or petitioning' [citation], that could give rise to the Project CBD [defendants'] claimed liability for libel or false light as alleged in the first amended complaint." (*Id.* at p. 620.) We further concluded that the "Project CBD defendants simply cannot identify any allegations of protected activity that support the libel and false light claims for relief, as is their burden under the first prong of the anti-SLAPP analysis. [Citation.]" (*Ibid.*)

This court affirmed "the denial of the anti-SLAPP motion with respect to counts 1 and 3, given that no protected or unprotected activity on the part of the Project CBD defendants [was] alleged to support the claims for relief asserted in these counts." We explained that our affirmance of the court's denial of the anti-SLAPP motion with respect to counts 1 and 3 would "allow the parties, themselves, to correct the course of this litigation in the trial court if they determine that such a course correction is necessary." (*Medical Marijuana*, *supra*, 6 Cal.App.5th at pp. 621–622.)

After remand of the matter to the trial court, the Project CBD defendants demurred to the first amended complaint, asserting that the lack of any alleged conduct on their part to support the remaining claims against them required dismissal of the operative pleading. They also contended that the plaintiffs should not be permitted to amend the

8

pleading, arguing that additional amendment to assert proper claims would be time-barred.

The trial court sustained the Project CBD defendants' demurrer to the first amended complaint, but permitted the plaintiffs to file an amended complaint to properly set forth defamation claims against the Project CBD defendants.

The plaintiffs filed a second amended complaint—the complaint underlying this appeal—in which they allege causes of action for libel, false light, and unfair competition under Business and Professions code section 17200 against the Project CBD defendants.[6]

In response to the filing of the second amended complaint, the Project CBD defendants filed an anti-SLAPP motion seeking to strike the claims asserted against them. In support of their contention that the plaintiffs were unable to demonstrate a probability of prevailing on their claims, the Project CBD defendants relied on the factual allegations of the second amended complaint, as well as documentary evidence intended to demonstrate that the plaintiffs should be considered to be limited purpose public figures,

---

[6] The copy of the second amended complaint in the Appellants' Appendix does not appear to be file stamped. We therefore do not know the date on which the second amended complaint was filed, nor whether the document included in the Appellants' Appendix is, in fact, the document filed with the court. Because the plaintiffs have not asserted that the record contains anything other than an accurate copy of the second amended complaint that was filed in this action, we proceed on the understanding that this document is an accurate copy of the operative pleading in the action. Parties should ensure that court file-stamped copies of relevant documents are provided in the appellate record in the future.

9

such that they would be required to establish that the defendants acted with actual malice in publishing any defamatory material.

The plaintiffs filed an opposition to the anti-SLAPP motion in which they cited additional alleged inaccuracies in the Hemp Oil Hustlers Article that they did not mention in the second amended complaint.

On August 3, 2018, the trial court denied the Project CBD defendants' anti-SLAPP motion, concluding that the second amended complaint "sufficiently pleads the substance of the allegedly false statements."[7] The court stated that it "remains disputed as to whether Plaintiffs can be treated as 'limited purpose public figures,' " but went on to conclude that "[e]ven assuming Plaintiffs could be elevated to the status of limited public figures, the evidence presented by Plaintiffs supports a reasonable inference that Defendants engaged in 'unreasonable conduct constituting an extreme departure from the standards of investigation and reporting ordinarily adhered to by responsible publishers,' " citing *Curtis Pub. Co. v. Butts* (1967) 388 U.S. 130, 155. The trial court ultimately concluded that the "Plaintiffs have demonstrated a probability of prevailing on the merits" of their libel, false light, and Business and Professions Code section 17200 claims.

---

[7] The trial court did not specifically state or identify the "allegedly false statements" that it determined had been sufficiently pleaded. Elsewhere in the court's order, the court stated that "Plaintiffs present *several declarations* demonstrating that many statements within the article are false." (Italics added.)

10

The Project CBD defendants filed a timely notice of appeal from the trial court's order denying their anti-SLAPP motion.

III.

DISCUSSION

A. *Anti-SLAPP overview and relevant legal standards*

A SLAPP suit is "a meritless lawsuit 'filed primarily to chill the defendant's exercise of First Amendment rights.' " (*Paul v. Friedman* (2002) 95 Cal.App.4th 853, 861, quoting *Wilcox v. Superior Court* (1994) 27 Cal.App.4th 809, 815, fn. 2.) California's anti-SLAPP statute allows a defendant to move to dismiss "certain unmeritorious claims that are brought to thwart constitutionally protected speech or petitioning activity." (*Robinzine v. Vicory* (2006) 143 Cal.App.4th 1416, 1420–1421.) The anti-SLAPP statute provides: "A cause of action against a person arising from any act of that person in furtherance of the person's right of petition or free speech under the United States Constitution or the California Constitution in connection with a public issue shall be subject to a special motion to strike, unless the court determines that the plaintiff has established that there is a probability that the plaintiff will prevail on the claim." (Code Civ. Proc., § 425.16, subd. (b)(1).)[8]

---

8      All further statutory references are to the Code of Civil Procedure unless otherwise indicated.

11

A court's consideration of an anti-SLAPP motion involves a two-pronged analysis. (*Episcopal Church Cases* (2009) 45 Cal.4th 467, 477.)  The Supreme Court has expounded on the standards to be applied in this two-pronged analysis:

> "At the first step, the moving defendant bears the burden of identifying all allegations of protected activity, and the claims for relief supported by them. . . .  If the court determines that relief is sought based on allegations arising from activity protected by the statute, the second step is reached.  There, the burden shifts to the plaintiff to demonstrate that each challenged claim based on protected activity is legally sufficient and factually substantiated. The court, without resolving evidentiary conflicts, must determine whether the plaintiff's showing, if accepted by the trier of fact, would be sufficient to sustain a favorable judgment.  If not, the claim is stricken.  Allegations of protected activity supporting the stricken claim are eliminated from the complaint, unless they also support a distinct claim on which the plaintiff has shown a probability of prevailing."  (*Baral v. Schnitt* (2016) 1 Cal.5th 376, 396 (*Baral*).)

To make a showing under the first prong, the defendant need not show that the actions it is alleged to have taken were protected as a matter of law, but need only establish a prima facie case that its alleged actions fell into one of the categories listed in section 425.16, subdivision (e).  (See *Flatley v. Mauro* (2006) 39 Cal.4th 299, 314.)

If the court finds that the defendant has made the required showing, the burden shifts to the plaintiff to demonstrate that "there is a probability that the plaintiff will prevail on the claim."  (§ 425.16, subd. (b)(1); see *DuPont Merck Pharmaceutical Co. v. Superior Court* (2000) 78 Cal.App.4th 562, 567–568.)  The second step of the anti-SLAPP analysis consists of "a 'summary-judgment-like procedure.' "  (*Baral*, *supra*, 1 Cal.5th at p. 384.)  At this stage, "[t]he court does not weigh evidence or resolve conflicting factual claims.  Its inquiry is limited to whether the plaintiff has stated a

12

legally sufficient claim and made a prima facie factual showing sufficient to sustain a favorable judgment. It accepts the plaintiff's evidence as true, and evaluates the defendant's showing only to determine if it defeats the plaintiff's claim as a matter of law." (*Id.* at pp. 384–385.)

"Only a cause of action that satisfies both prongs of the anti-SLAPP statute—i.e., [one] that arises from protected speech or petitioning and lacks even minimal merit—is a SLAPP, subject to be stricken under the statute." (*Navellier v. Sletten* (2002) 29 Cal.4th 82, 89, italics omitted.)

"As is true with summary judgment motions, the issues in an anti-SLAPP motion are framed by the pleadings." (*Paulus v. Bob Lynch Ford, Inc.* (2006) 139 Cal.App.4th 659, 672 (*Paulus*); *Church of Scientology v. Wollersheim* (1996) 42 Cal.App.4th 628, 655 [the pleadings "frame the issues to be decided"].) Thus, the act or acts underlying a claim for purposes of an anti-SLAPP statute *is determined from the plaintiffs' allegations*. (*Baral, supra*, 1 Cal.5th at p. 396.) Because the issues to be determined in an anti-SLAPP motion are framed by the pleadings, we will not "insert into a pleading claims for relief based on *allegations of activities that plaintiffs simply have not identified . . . .* It is not our role to engage in what would amount to a redrafting of [a] complaint in order to read that document as alleging conduct that supports a claim *that has not in fact been specifically alleged*, and then assess whether the pleading that we have essentially drafted could survive the anti-SLAPP motion directed at it." (*Medical Marijuana*, *supra*, 6 Cal.App.5th at p. 621, fn. omitted, italics added.)

Our review of the trial court's order on an anti-SLAPP motion is de novo.  (*Oasis West Realty, LLC v. Goldman* (2011) 51 Cal.4th 811, 819–820.)  Like the trial court, this court considers " 'the pleadings, and supporting and opposing affidavits . . . upon which the liability or defense is based.' "  (*Soukup v. Law Offices of Herbert Hafif* (2006) 39 Cal.4th 260, 269, fn. 3, (*Soukup*), quoting § 425.16, subd. (b)(2).)  The court does not weigh or compare the evidence, but rather accepts as true the evidence favorable to the plaintiff while evaluating the defendant's evidence " 'only to determine if it has defeated that submitted by the plaintiff as a matter of law.' "  (*Soukup*, at p. 269, fn. 3.)

B.  *Analysis*

    1.  *The plaintiffs have not demonstrated a probability of prevailing on their pleaded cause of action for libel*

Libel is one form of defamation.  (Civ. Code, § 44 [defamation occurs either through libel or slander].)  Libel is defamation that is based on a publication in writing or other fixed representation that can be seen.  (*Id.*, § 45.)

To establish defamation, a plaintiff must show a publication that was false, defamatory, unprivileged, and that has a natural tendency to injure or cause special damages.  (*Jackson v. Mayweather* (2017) 10 Cal.App.5th 1240, 1259 (*Jackson*).)  "Because [a defamatory] statement must contain a provable falsehood, courts distinguish between statements of fact and statements of opinion for purposes of defamation liability.  Although statements of fact may be actionable as libel, statements of opinion are constitutionally protected."  (*GetFugu, Inc. v. Patton Boggs LLP* (2013) 220 Cal.App.4th 141, 155.)

14

Publication occurs when a defamatory statement is made to at least one third person.  (*Cunningham v. Simpson* (1969) 1 Cal.3d 301, 307.)

" 'The sine qua non of recovery for defamation . . . is the existence of a falsehood.' [Citation.]"  (*Baker v. Los Angeles Herald Examiner* (1986) 42 Cal.3d 254, 259 (*Baker*), italics omitted.)  As a result, truth is a defense to a libel action.  (*Campanelli v. Regents of University of California* (1996) 44 Cal.App.4th 572, 581–582.)  "[T]he defendant need not prove the literal truth of the allegedly libelous accusation, so long as the imputation is substantially true so as to justify the 'gist or sting' of the remark.  [Citation.]"  (*Ibid.*)

Because "the issues in an anti-SLAPP motion are framed by the pleadings" (*Paulus*, *supra*, 139 Cal.App.4th at p. 672), we look to the second amended complaint to determine what activity on the part of the Project CBD defendants the plaintiffs have alleged as forming the basis of their claim for libel.  "The general rule is that the words constituting an alleged libel must be specifically identified, if not pleaded verbatim, in the complaint."  (*Kahn v. Bower* (1991) 232 Cal.App.3d 1599, 1612, fn. 5 (*Kahn*), citing 5 Witkin, Cal. Procedure (3d ed. 1985) Pleading, § 688, p. 140, *des Granges v. Crall* (1915) 27 Cal.App. 313, 315, *Lipman v. Brisbane Elementary Sch. Dist*. (1961) 55 Cal.2d 224, 235, and *Okun v. Superior Court* (1981) 29 Cal.3d 442, 458 (*Okun*).)

The plaintiffs allege, under the heading titled "FIRST CAUSE OF ACTION [¶] (For Libel Against Defendants PROJECT CBD, CANTU, LEE and DOES 1 through 20, inclusive)" (boldface & underscoring omitted), the following:

15

"58.  Plaintiffs reallege and incorporate by this reference the allegations contained in Paragraphs 1 through 57, above, as though fully set forth herein.[9]

"59.  Plaintiffs are informed and believe, and based thereon allege, that on or about October 14, 2014, CANTU, by and through LEE and PROJECT CBD, published the Hemp Oil Hustlers Article.  *That article claimed the existence of evidence that RSHO was contaminated with heavy metals and solvents without verifying the accuracy of the testing results from Stewart.  PROJECT CBD also alleged that multiple people became ill after using RSHO due to heavy metals and other toxins based on Cranford's opinion.*  LEE wrote a forward for the Hemp Oil Hustlers Article, asserting opinions and rumors as fact without proof or citation, and published the article on the PROJECT CBD website.  (See Exhibit 'M' attached hereto, the full content of which is incorporated herein by this reference.)"  (Italics added.)

It is clear from the text of these special allegations that the only "words constituting an alleged libel" (*Kahn*, *supra*, 232 Cal.App.3d at p. 1612, fn. 5) on which

---

9    The only paragraph in Paragraphs 1 through 57 in the second amended complaint that sets forth any allegations regarding the purportedly "false" statements published by the Project CBD defendants is paragraph 49, which is identical to paragraph 59 of the complaint, and states:

"49.  Plaintiffs are informed and believe, and based thereon allege, that on or about October 14, 2014, CANTU, by and through LEE and PROJECT CBD, published [the Hemp Oil Hustlers Article]. That article claimed the existence of evidence that RSHO was contaminated with heavy metals and solvents without verifying the accuracy of the testing results from Stewart.  PROJECT CBD also alleged that multiple people became ill after using RSHO due to heavy metals and other toxins based on Cranford's opinion.  LEE wrote a forward for the Hemp Oil Hustlers Article, asserting opinions and rumors as fact without proof or citation, and published the article on the PROJECT CBD website.  (See Exhibit 'M' attached hereto, the full content of which is incorporated herein by this reference.)"

16

the plaintiffs are relying are the following (in italics above): (1) that the "[Hemp Oil Hustlers] article claimed the existence of evidence that RSHO was contaminated with heavy metals and solvents without verifying the accuracy of the testing results from Stewart" and (2) that the defendants "alleged that multiple people became ill after using RSHO due to heavy metals and other toxins based on Cranford's opinion."[10]

The parties appear to agree that the plaintiffs' libel claims "aris[e] from" (§ 425.16, subd. (b)(1)) the Project CBD defendant's protected speech, and that the first prong of the anti-SLAPP statute is therefore met.

The burden thus shifted to the plaintiffs to demonstrate that "there is a probability that [they] will prevail on the claim." (§ 425.16, subd. (b)(1); see *Equilon Enterprises, LLC v. Consumer Cause, Inc.* (2002) 29 Cal.4th 53, 61.)

a. *The claims relate back to the first amended complaint and thus are not time-barred*

As an initial matter, with respect to the plaintiffs' probability of prevailing, the Project CBD defendants contend that the plaintiffs are unable to demonstrate a probability of prevailing on their claims for libel[11] because any such claims are time-

---

10      Although the second amended complaint also alleges that Lee, in particular, "assert[ed] opinions and rumors as fact without proof or citation," this statement does not specify which "opinions and rumors" Lee is alleged to have asserted that are purportedly false. This statement thus does not sufficiently identify the "words constituting an alleged libel" (*Kahn*, *supra*, 232 Cal.App.3d at p. 1612, fn. 5) committed by Lee.

11      Although the second amended complaint pleads a single "cause of action" for libel, it is clear that there are—for purposes of section 425.15—at least two "causes of action," or claims, for libel asserted in the complaint. In *Baral*, *supra*, 1 Cal.5th 376, the California Supreme Court held that a "motion to strike" under section 425.16 "may be

17

barred. According to the Project CBD defendants, because libel and false light claims have a one-year statute of limitations, and the alleged defamatory statements were published in 2014, the plaintiffs were required to bring their claims for libel and false light no later than October 14, 2015. The Project CBD defendants assert that the second amended complaint was not filed on or before that date.

The plaintiffs contend that their claims for libel and false light should relate back to the filing of the first amended complaint, which was filed prior to October 14, 2014.

A complaint must contain "[a] statement of the facts constituting the cause of action, in ordinary and concise language." (§ 425.10, subd. (a)(1).) This fact-pleading requirement obligates the plaintiff to allege ultimate facts that "as a whole apprise[ ] the adversary of the factual basis of the claim. [Citations.]" (*Estate of Archer* (1987) 193 Cal.App.3d 238, 245.)

---

used to attack parts of a [single cause of action] as pleaded." (*Baral*, at pp. 381–382, 393, 384–396.) In defining a claim properly subject to a motion to strike, the *Baral* court stated that the Legislature "had in mind allegations of protected activity that are asserted as grounds for relief. The targeted claim must amount to a 'cause of action' in the sense that it is alleged to justify a remedy." (*Id.* at p. 395, italics omitted.) "Neither the form of the complaint nor the primary right at stake is determinative" of what constitutes such a claim. (*Ibid.*) Here, each assertion of a defamatory statement represents a specific act that could, on its own, give rise to a claim for relief. (See *Shively v. Bozanich* (2003) 31 Cal.4th 1230, 1242 [each publication of a defamatory statement gives rise to a new cause of action].) One of the plaintiffs' claims for libel is that the Project CBD defendants published a statement that "claimed the existence of evidence that RSHO was contaminated with heavy metals and solvents without verifying the accuracy of the testing results from Stewart," and the other claim for libel is that the Project CBD defendants published a statement that "alleged that multiple people became ill after using RSHO due to heavy metals and other toxins based on Cranford's opinion."

18

The requirement that the complaint allege ultimate facts forming the basis for the plaintiff's cause of action is central to the relation-back doctrine and the determination whether an amended complaint should be deemed filed as of the date of the original pleading. (See *Bartalo v. Superior Court* (1975) 51 Cal.App.3d 526, 533 [explaining role of fact-pleading requirement in application of the relation-back doctrine].) An amended complaint relates back to a timely filed original complaint, and thus avoids the bar of the statute of limitations, only if it rests on the same general set of facts and refers to the same " 'offending instrumentalities' " as the original complaint. (*Barrington v. A. H. Robins Co*. (1985) 39 Cal.3d 146, 151; *Austin v. Massachusetts Bonding & Ins. Co.* (1961) 56 Cal.2d 596, 600 ["where an amendment is sought after the statute of limitations has run, the amended complaint will be deemed filed as of the date of the original complaint provided recovery is sought in both pleadings *on the same general set of facts*" (italics added)].)

The plaintiffs' claims for libel relate back to the first amended complaint because even though the plaintiffs failed to sufficiently assert claims for libel or false light against the Project CBD defendants in their first amended complaint, the plaintiffs nevertheless did include in that pleading allegations of the "ultimate facts" (*Estate of Archer*, *supra*, 193 Cal.App.3d at p. 245) upon which they base their current libel and false light claims. Specifically, the same factual allegations that are alleged in the second amended complaint pertaining to the conduct on the part of the Project CBD defendants on which the libel claims are based were alleged in the general factual allegations of the first

19

amended complaint.  (See *Medical Marijuana*, *supra*, 6 Cal.App.5th at p. 617 [quoting from first amended complaint where the following statements were made in the factual allegations of the general allegations:  "This article claimed to have evidence that RSHO was contaminated with heavy metals and solvents without verifying the accuracy of the results from Stewart Environmental.  Project CBD also alleged that multiple people became ill after using RSHO due to heavy metals and other toxins based on Cranford's opinion"].)  While these allegations were set forth in the general factual allegations of the first amended complaint and were not in any of the enumerated claims, they were sufficient to "apprise[ ]" the Project CBD defendants of "the factual basis of the claim[s]" asserted in the second amended complaint."  (*Estate of Archer*, *supra*, at p. 245.)  We therefore conclude that the relation-back doctrine applies, such that the Project CBD defendants cannot rely on the statute of limitations to establish that the plaintiffs cannot demonstrate a probability of prevailing.

> b.  *The plaintiffs cannot demonstrate falsity with respect to the statements identified in the second amended complaint, and they fail to properly plead any other provably false statements*

We conclude that the plaintiffs cannot demonstrate a probability of prevailing on their libel claims because the plaintiffs have not demonstrated that they can establish that the purportedly defamatory statements set forth in the libel cause of action are false.[12]

---

12    Where a case involves matters of public interest, the plaintiff, even a private figure plaintiff, bears the burden of proving that the statements at issue are false.  (*Gallagher v. Connell* (2004) 123 Cal.App.4th 1260, 1274–1275.)  "A review of the case law since *Philadelphia Newspapers, Inc. v. Hepps* [(1986) 475 U.S. 767] reveals no precise boundaries defining an issue of public importance."  (*Id.* at p. 1275.)  "It does appear,

20

As we have previously summarized, " ' "[t]he elements of a defamation claim are (1) a publication that is (2) false, (3) defamatory, (4) unprivileged, and (5) has a natural tendency to injure or causes special damage." ' [Citations.] 'In general, . . . a written communication that is false, that is not protected by any privilege, and that exposes a person to contempt or ridicule or certain other reputational injuries, constitutes libel.' " (*Jackson*, *supra*, 10 Cal.App.5th at pp. 1259–1260.) A " 'provably false factual assertion' . . . is indispensable to any claim for defamation." (*Gilbert v. Sykes* (2007) 147 Cal.App.4th 13, 32.) "The general rule is that the words constituting an alleged libel *must be specifically identified, if not pleaded verbatim*, in the complaint." (*Kahn*, *supra*, 232 Cal.App.3d at p. 1612, fn. 5, italics added.)

In considering a claim for libel, a court examines the totality of the circumstances, including the context in which the statement was made. (*Baker*, *supra*, 42 Cal.3d at pp. 260–261.) Thus, when analyzing whether a particular publication or statement is defamatory, "[t]he publication in question may not be divided into segments and each

---

however, for a matter to be of public interest in the defamation context it must be of concern to a large segment of the populace as opposed to a small fragment having a special interest." (*Id.* at p. 1275.) It would seem that the efficacy and safety of a product marketed and sold to the public does concern a matter of public interest. (See, e.g., *Wilbanks v. Wolk* (2004) 121 Cal.App.4th 883, 898 ["Consumer information . . . at least when it affects a large number of persons, also generally is viewed as information concerning a matter of public interest"]; *Melaleuca, Inc. v. Clark* (1998) 66 Cal.App.4th 1344, 1363 ["the public has a well-recognized interest in knowing about the quality and contents of consumer goods"].) Indeed, the plaintiffs here appear to concede that this is so, arguing at one point in their briefing that they "met [their] burden of presenting evidence of falsity." (Boldface & some capitalization omitted.)

21

portion treated as a separate unit; it must be read as a whole in order to understand its import and the effect that it was calculated to have on the reader, and construed in the light of the whole scope and apparent object of the writer, considering not only the actual language used, but the sense and meaning that may be fairly presumed to have been conveyed to those who read it.  [Citation.]"  (*Selleck v. Globe International, Inc.* (1985) 166 Cal.App.3d 1123, 1131.)  In addition, falsity cannot be shown if the statement at issue appears *substantially true*:  "To bar liability, ' "it is sufficient if the substance of the charge be proved true, irrespective of slight inaccuracy in the details."  [Citations.] . . . [Citation.] . . . Minor inaccuracies do not amount to falsity so long as "the substance, the gist, the sting, of the libelous charge be justified."  [Citations.]  Put another way, the statement is not considered false unless it "would have a different effect on the mind of the reader from that which the pleaded truth would have produced."  [Citations.]' [Citation.]"  (*Vogel v. Felice* (2005) 127 Cal.App.4th 1006, 1021 (*Vogel*), italics omitted.)

Starting as we must with the pleading, which provides the outer boundaries of the issues that are to be addressed in an anti-SLAPP motion (see *Paulus*, *supra*, 139 Cal.App.4th at p. 672), we begin with the statement in the second amended complaint that the Hemp Oil Hustlers Article "claimed the existence of evidence that RSHO was contaminated with heavy metals and solvents without verifying the accuracy of the testing results from Stewart."  To the extent that the plaintiffs are alleging, in this statement, that the Project CBD defendants published "evidence that RSHO was contaminated with heavy metals and solvents *without verifying the accuracy of the testing*

22

*results from Stewart*" (italics added), this allegation does not constitute an allegation of defamation. An allegation that someone published information without having first verified its accuracy is insufficient, on its own, to allege that the person published a false and defamatory statement about the plaintiff. Further, even assuming that the purportedly false statement is that there is "evidence that RSHO was contaminated with heavy metals and solvents," our review of the attached Hemp Oil Hustlers Article reveals no statement "claim[ing] the existence of evidence that RSHO was contaminated with heavy metals and solvents." However, the article does contain the following statements, which appear to form the basis of the plaintiffs' contention with respect to this factual allegation related to the Stewart Labs testing: "Most cannabis testing labs do not test for heavy metals, so Cranford submitted the RSHO sample to Stewart Environmental Consultants in Fort Collins. The initial results appeared to confirm what Cranford and Warrior had suspected: The RSHO contained high levels of several heavy metals, including nickel, selenium, molybdenum, arsenic, and silver."

As the plaintiffs acknowledge in the second amended complaint, there *is* evidence that a sample presented to Stewart labs as being RSHO resulted in a preliminary report reflecting what is reported in the Hemp Oil Hustlers Article. The Hemp Oil Hustlers Article makes clear that it was Cranford who submitted the sample to Stewart Labs, and the Article as a whole is clear in identifying Cranford as someone who was seeking to discredit the RSHO product. Readers are thus free to question—as the plaintiffs appear to do by alleging that the sample was only "purported" to be RSHO—whether the sample

23

provided to Stewart Labs by Cranford was actually RSHO, or whether, even if it was RSHO, it may have been contaminated after production. The Article does not attempt to state whether the findings by the lab were accurate; rather, the Article simply states, accurately, what the initial Stewart Labs report indicated.

Further, the context of the Article as a whole makes clear that there were *contradictory* lab results, some of which demonstrated the existence of problematic ingredients, and some of which did not. Indeed, the Hemp Oil Hustlers Article is completely up front about the fact that within days of releasing the initial test results, Stewart Labs issued its final report with respect to the RSHO sample, in which it reported that it had obtained results that contradicted its preliminary findings. In the paragraph immediately following the paragraph discussing the "initial results" of the RSHO testing, the Article states: "A few days later, Stewart Environmental Consultants issued a second report that contradicted its earlier findings. Five numbers, all pertaining to heavy metal toxins, were changed from unsafe to safe levels (see Appendix B)." The Hemp Oil Hustlers Article thus does not state or imply that all RSHO contains heavy metals and solvents. Rather, the Article states that one lab's testing produced contradictory results with respect to the levels of heavy metals present in an RSHO sample. The article thus acknowledges and addresses conflicting evidence regarding the RSHO testing, and in doing so, truthfully and accurately reports the discrepancies in the test results and leaves it to readers to determine for themselves what might have caused these discrepancies.

The plaintiffs do not argue on appeal (nor did they argue in the trial court) that the statement in the Hemp Oil Hustlers Article regarding Stewart Labs's initial test results demonstrating that the RSHO sample "contained high levels of several heavy metals, including nickel, selenium, molybdenum, arsenic, and silver" is false. Nor do they contend that there was no evidence "that RSHO was contaminated with heavy metals and solvents" (the phrasing in the second amended complaint), such that a statement or implication to the effect that there was "evidence that RSHO was contaminated with heavy metals and solvents" could be demonstrated to be provably false. Indeed, they do not contend that the initial test results from Stewart Labs were not as the Hemp Oil Hustlers Article reports. Rather, their contention is that the initial lab results that Stewart Labs reported to Cranford were inaccurate or wrong, and that the Hemp Oil Hustlers article "claimed the existence of evidence that RSHO was contaminated with heavy metals and solvents without verifying the accuracy of the testing results from Stewart." However, as the plaintiffs appear to concede, Stewart Labs's report of its initial testing results *did* state that RSHO was contaminated with heavy metals. The plaintiffs therefore cannot demonstrate that a statement reporting the existence of these initial lab results is a provably false statement.

The next statement that we consider is the plaintiffs' factual allegation that the Hemp Oil Hustlers Article "alleged that multiple people became ill after using RSHO due to heavy metals and other toxins based on Cranford's opinion." First, to the extent that the plaintiffs are alleging that the Article reported that it was "Cranford's opinion" that

25

multiple people became ill after using RSHO, the plaintiffs have presented no evidence that such a statement is false; there is no evidence that it is not Cranford's opinion that more than one person became ill after taking RSHO.[13] Further, to the extent that this allegation may be broadly interpreted as alleging that the Project CBD defendants, themselves, asserted that "multiple people became ill after using RSHO," the plaintiffs have not demonstrated that they can establish that such an assertion is false.

Specifically, the Article does not state anything that can be understood as asserting as fact that RSHO, in fact, *caused* multiple people to become ill. Rather, the Article is clear that it is merely reporting what others have claimed regarding their experiences in using RSHO. For example, the Article states that "Warrior [one of the original persons who purportedly complained to Cranford] *alleges* that Real Scientific Hemp Oil . . . sickened her girl." (Italics added.) The Article also states, "Several people, adults as well as children, *say* they became ill after ingesting Real Scientific Hemp Oil. Others maintain they've gotten positive results with RSHO. And some assert that the hemp oil derivative didn't do much for them one way or another." (Italics added.) At another point, the Article details claims made by "Brandon Krenzler," that "[a]lmost immediately [after he gave his daughter some RSHO], she complained of severe stomach cramps." Krenzler also told Cantu that "[o]ther people he'd sent samples to

---

13    The term "multiple" may refer to more than one. Indeed, the first definition provided for the word "multiple" in Merriam-Webster's online dictionary is "consisting of, including, or involving more than one. (<http://www.merriam-webster.com/dictionary/multiple>, viewed March 20, 2020.)

26

*reported* similar gut-wrenching reactions."  (Italics added.)  Cantu further reported that Project CBD had sent to a laboratory for testing "a[n] RSHO Gold sample from a Crohn's patient *who said* that she and a friend both became 'violently ill' after they ingested the oil."  (Italics added.)  In response to this reporting, the plaintiffs did not refute or deny that any of these individuals had, in fact, made these claims about their own subjective experiences after using RSHO.  Rather, the "evidence" on which the plaintiffs rely in contending that an assertion that "multiple people became ill after using RSHO" is false is the declaration of Stuart W. Titus, who identifies himself as "the President of Medical Marijuana, Inc."  In his declaration, Titus states:

> "3.  The ProjectCBD report states that 'several' people have gotten sick from RSHO.  This is a false statement.  I am unaware of any persons ever getting sick from Medical Marijuana, Inc.'s RSHO product.
>
> "4. Only the two persons identified in the ProjectCBD report have ever presented as being 'sick' from RSHO.  No other 'several' persons have ever been identified and I do not know what other 'persons' the article is referring to."

These statements do not demonstrate, or even suggest, that Cantu fabricated the existence of the sources cited in the Article or that he fabricated or falsified what the sources actually told him.  Indeed, these statements do not even manage to undermine the veracity of the underlying claims in the sources' statements; the mere fact that the President of MMI is "unaware of any persons ever getting sick from" RSHO is insufficient to establish that no one has ever gotten sick as a result of ingesting RSHO. Further, this statement appears to *concede* the existence of at least two individuals who

27

"presented as being 'sick' from RSHO"; two persons is sufficient to support the Article's reporting that "multiple" people have reported becoming ill after using RSHO.

In fact, rather than specifically stating how they can demonstrate that either of the alleged defamatory statements is false, in briefing on appeal the plaintiffs instead refer to multiple other statements in the Hemp Oil Hustlers Article—*statements that plaintiffs neither identify nor refer to in the second amended complaint*—to demonstrate on appeal that they have "[m]et [their] [b]urden of [p]resenting [e]vidence of [f]alsity." (Boldface omitted.) What the plaintiffs fail to recognize is that their burden is not merely to claim that there exist some false statement in an article identified by the operative pleading, but rather, to demonstrate the *falsity of specific statements from the article that are identified as defamatory in the plaintiffs' operative pleading*.[14] In fact, in a subheading titled "False Statements in the Report" (boldface omitted), in the portion of the plaintiffs' brief that purports to set forth the factual background of this action, the plaintiffs include a table "summariz[ing]" 19 purportedly "false statements and inaccuracies" in the Hemp Oil Hustlers Article.[15] None of these 19 statements is quoted, identified, mentioned or otherwise referenced in any way in the second amended complaint.

---

[14] These statements are not even highlighted, underlined, or otherwise identified as being the basis for a claim for libel in the copy of the Article that is attached as an exhibit to the second amended complaint.

[15] The table includes quotations of portions of the Article, together with the evidence that the plaintiffs assert demonstrates the falsity of the quoted statements.

We reiterate that the pleading itself provides the outer boundaries of the issues that are to be addressed in an anti-SLAPP motion. (See *Paulus*, *supra*, 139 Cal.App.4th at p. 672.) Because "[t]he general rule is that the words constituting an alleged libel *must be specifically identified, if not pleaded verbatim*, in the complaint" (*Kahn*, *supra*, 232 Cal.App.3d at p. 1612, fn. 5, italics added), a court need not consider assertions of defamatory statements that are not alleged in the complaint (see *Vogel*, *supra*, 127 Cal.App.4th at p. 1017, fn. 3 [A court would be "justified in disregarding any evidence or argument concerning statements not explicitly set forth in the complaint"]).

In response to the Project CBD defendants' contention that the pleading sets forth, at most, two potentially actionable assertions of defamatory statements (the two statements identified above, from paragraph 59 of the second amended complaint), the plaintiffs argue that they need not plead the falsehoods underlying their libel claims "verbatim," but instead, that "a pleading is sufficient if it alleges the substance of the defamatory statement." In support of this assertion, the plaintiffs quote the following language from *Okun*, *supra*, 29 Cal.3d at p. 458: "Less particularity is required when it appears that defendant has superior knowledge of the facts, so long as the pleading gives notice of the issues sufficient to enable preparation of a defense. [Citations.] Nor is the allegation defective for failure to state the exact words of the alleged slander."

The plaintiffs' position is problematic, at best. First, *Okun* is inapposite. The *Okun* court was describing the pleading requirements for a claim for *slander*, not libel. "Slander is a false and unprivileged publication, *orally uttered*, and also communications

29

by radio or any mechanical or other means." (Civ. Code, § 46.) "Libel is a false and unprivileged publication by writing, printing, picture, effigy, or other fixed representation to the eye . . . ." (*Id.*, § 45.) Case law requires that statements alleged to constitute libel "must be specifically identified, if not pleaded verbatim, in the complaint" (*Gilbert v. Sykes* (2007) 147 Cal.App.4th 13, 31; *Vogel*, *supra*, 127 Cal.App.4th at p. 1017, fn. 3; *Kahn*, *supra*, 232 Cal.App.3d at p. 1612, fn. 5); less specificity is required in the pleading of slander, given that slander may "be charged by *alleging the substance of the defamatory statement*" (*Okun*, *supra*, 29 Cal.3d at p. 458, italics added). The quotation that the plaintiffs have provided from *Okun* helps explain why this is so; where the defendant may have superior knowledge of the precise words that were actually stated and on which a plaintiff is basing his or her claim, it makes sense to give the plaintiff more leeway to allege the "substance" of the perceived wrong. "It is obvious that a plaintiff, attempting to plead and prove an alleged slander which occurred when he was not present, has a far more difficult task *than when the defamation alleged is written, where it may be seen*. As we have previously pointed out, there is no requirement that, in slander, the pleading and [ultimate] proof must be identical in order for a plaintiff to recover." (*Albertini v. Schaefer* (1979) 97 Cal.App.3d 822, 832–833, italics altered.) However, even for purposes of slander, "the disparagement set forth in the complaint must be *sufficiently close to the actual words proved* to acquaint a defendant with what he must defend against." (*Ibid.*) (Italics added.)

Here, the plaintiffs have a written copy of the article published by the defendants; there is simply no justification for them to set forth in their complaint only the "substance" of the statements that they claim are defamatory, instead of the *actual statements* that they assert are false and defamatory.

Second, even if plaintiffs were correct, other than the two "statements" that we have addressed, plaintiffs do not even allege in the second amended complaint the purported "substance" of any of the other purportedly false statements that they enumerate in the table set forth in their brief on appeal. Thus, even if we were to apply the pleading standard to which the plaintiffs suggest they should be held—i.e., the pleading standard for slander—the plaintiffs have failed to meet even that standard with respect to the additional false statements on which they attempt to rely in demonstrating the existence of "falsity" on appeal that do not relate to the two "statements" alleged in the second amended complaint.[16]

We unequivocally reject the plaintiffs' suggestion that "[i]t was . . . unnecessary to recite each challenged statement in the pleading because the entire [Article] was attached to the second amended complaint." Specifically, we reject the idea that asserting that a

---

[16]    To the extent that the statements that the plaintiffs refer to in their table of purportedly "false statements" go to the question of whether the Project CBD defendants "claimed the existence of evidence that RSHO was contaminated with heavy metals and solvents without verifying the accuracy of the testing results from Stewart" or "alleged that multiple people became ill after using RSHO due to heavy metals and other toxins based on Cranford's opinion," we have considered those statements in our discussion of these allegations.

31

25-plus page article contains false statements and merely attaching a copy of the entire article to the complaint—without identifying the specific matter that is purportedly false—is sufficient to put a defendant (or a court, for that matter) on notice of the conduct or statement that is alleged to form the basis for an actionable claim for defamation. In justifying their use of this tactic, the plaintiffs note, that "the complaint should set the matter out verbatim, either in the body or *as an attached exhibit*," (5 Witkin, Cal. Procedure (5th ed. 2008) Pleading, § 739, p. 159, italics added), thus suggesting that attaching an article that is alleged to contain defamatory statements to a complaint constitutes setting the matter out verbatim. However, the requirement that the alleged defamatory statement be set out verbatim does not permit a plaintiff to attach an entire multi-page article to a complaint without identifying the specific defamatory matter on which the plaintiff is relying and expect the defendants (and the court) to ferret out the purportedly false statements with no guidance whatsoever from the plaintiff. The plaintiffs clearly are not contending that every statement in the Hemp Oil Hustlers Article is false and defamatory. Attaching the *entire* Article to the operative complaint, without identifying which statements in the Article form the basis of their libel claims, is clearly insufficient.

The plaintiffs accuse the Project CBD defendants of "seek[ing] to avoid liability . . . by reframing the nature of MMI's claim." We reject this accusation, given that the "nature of MMI's claim" is determined *by the allegations of the pleading*, allegations that very clearly do not include any of the false statements upon which the

32

plaintiffs rely in asserting that they can establish a cause of action for libel. In sum, the plaintiffs, themselves, controlled the framing of their cause of action for libel, and they failed to identify any of the statements on which they rely on appeal to establish that the Project CBD defendants published "false" statements about them. We reject the plaintiffs' contention that they demonstrated a probability of prevailing based on purportedly false statements that are not mentioned or even alluded to in the second amended complaint. We therefore conclude that the plaintiffs have not demonstrated a probability of prevailing on their claim for libel.

2. *The plaintiffs have failed to demonstrate a probability of prevailing on their causes of action for false light and violations of Business and Professions Code section 17200*

"A 'false light' claim, like libel, exposes a person to hatred, contempt, ridicule, or obloquy and assumes the audience will recognize it as such." (*M. G. v. Time Warner, Inc.* (2001) 89 Cal.App.4th 623, 636.) "A 'false light' cause of action is in substance *equivalent to a libel claim*, and should meet the same requirements of the libel claim, including proof of malice [when required]." (*Aisenson v. American Broadcasting Co.* (1990) 220 Cal.App.3d 146, 161.) The plaintiffs acknowledge that their claims for false light are "subsumed" in the analysis of their libel claims. Indeed, neither party provides separate argument with respect to the false light cause of action, and both appear to concede that our determination with respect to the libel claims will determine the outcome of the anti-SLAPP analysis with respect to any false light claims, as well. Given that the plaintiffs rely on the same alleged conduct on the part of the Project CBD

33

defendants as the basis for their libel, false light, and unfair competition claims, we conclude that their false light and unfair competition claims suffer the same fate as their libel claims. (See *Jackson*, *supra*, 10 Cal.App.5th at p. 1264 [" '[w]hen a false light claim is coupled with a defamation claim, the false light claim is essentially superfluous, and stands or falls on whether it meets the same requirements as the defamation cause of action' "].)

Business and Professions Code section 17200 "prohibits unfair competition, including unlawful, unfair, and fraudulent business acts. The UCL [unfair competition law] covers a wide range of conduct. It embraces ' " ' "anything that can properly be called a business practice and that at the same time is forbidden by law." ' " [Citations.]' [Citation.] . . . [¶] [Business and Professions Code] section 17200 'borrows' violations from other laws by making them independently actionable as unfair competitive practices. [Citation.]" (*Korea Supply Co. v. Lockheed Martin Corp*. (2003) 29 Cal.4th 1134, 1143.) However, "a practice may violate the UCL even if it is not prohibited by another statute. Unfair and fraudulent practices are alternate grounds for relief. [Citation.]" (*Zhang v. Superior Court* (2013) 57 Cal.4th 364, 370.)

With respect to the plaintiffs' claim under the UCL, the conduct on the part of the Project CBD defendants that the plaintiffs identify is the following: "Plaintiffs are informed and believe, and based thereon allege, that said Defendants' publication and republication of the Hemp Oil Hustlers Article has caused, and will continue to cause, confusion, mistake, and deception, in that those actions have caused, and will continue to

34

cause, customers, potential customers, and the public to believe that Plaintiffs are companies which supply a dangerous product, RSHO, that contains high heavy metal concentrations and bleach, and as companies that misrepresent the nature of their product."  Immediately following this allegation, the plaintiffs refer to the "false and defamatory statements as alleged herein."  On appeal, the plaintiffs appear to suggest that their UCL claim stands on its own, without reference to the allegations in the pleaded cause of action for libel.  However, in the trial court, the plaintiffs conceded that their UCL claim "is derivative of [the plaintiffs'] defamation and false light causes of action; that is, it is based on the same false and defamatory statements in the Article," and that the UCL "cause of action must therefore stand or fall with the underlying claims."  Given that there is no further indication in the second amended complaint as to what conduct or statements on the part of the Project CBD defendants, *other* than the statements identified in the pleaded cause of action for libel, plaintiffs rely on for their UCL cause of action, we agree that plaintiffs' UCL cause of action "must . . . stand or fall with the underlying claims" for libel and false light.  (See *Hawran v. Hixson* (2012) 209 Cal.App.4th 256, 277 [where a plaintiff's "UCL claim is derivative of [the plaintiff's] defamation cause of action, that is, it is based on the same assertedly false and defamatory press release statements, . . . that cause of action stands or falls with that underlying claim"].)  We therefore conclude that the trial court erred in denying the Project CBD defendants' anti-SLAPP motion to strike the causes of action stated for false light and unfair competition.

### 3. *Plaintiffs may not amend their complaint*

The plaintiffs contend that if this court concludes that the Project CBD defendants' anti-SLAPP motion should have been granted due to defects in the operative complaint, then they should be permitted to amend the complaint under the authority of *Nguyen-Lam v. Cao* (2009) 171 Cal.App.4th 858 (*Nguyen-Lam*). The Project CBD defendants counter that, pursuant to *Simmons v. Allstate Ins. Co.* (2001) 92 Cal.App.4th 1068, 1073 (*Simmons*), the general rule disallowing amendment after a defendant has made a prima facie showing that the allegations of the complaint are protected by the anti-SLAPP statute should apply because here, unlike in *Nguyen-Lam*, the problems with the plaintiffs' pleading are not "minor 'pleading technicalit[ies].' " Instead, an amended complaint would require "yet another Special Motion to Strike under 425.16, and, contrary to the prohibitions outlined in *Simmons*, the vicious cycle of using litigation to chill [the Project CBD defendants'] protected speech would continue." (Italics altered.) We conclude that the Project CBD defendants' argument is the better one under the circumstances.

"[S]ection 425.16 provides no mechanism for granting anti-SLAPP motions with leave to amend." (*Martin v. Inland Empire Utilities Agency* (2011) 198 Cal.App.4th 611, 629, italics omitted.) Courts have routinely concluded that plaintiffs may not be permitted to evade the intent of the anti-SLAPP statute by amendment once faced with an anti-SLAPP motion. (See, e.g., *Simmons*, *supra*, 92 Cal.App.4th 1068; *Jackson*, *supra*, 10 Cal.App.5th at pp. 1263–1264; *Contreras v. Dowling* (2016) 5 Cal.App.5th 394, 411

36

[" '[a] plaintiff . . . may not seek to subvert or avoid a ruling on an anti-SLAPP motion by amending the challenged complaint . . . in response to the motion' "]; *Hansen v. Department of Corrections & Rehabilitation* (2008) 171 Cal.App.4th 1537, 1547 ["A plaintiff cannot avoid [an anti-]SLAPP motion by amending the complaint"]; *Sylmar Air Conditioning v. Pueblo Contracting Services, Inc.* (2004) 122 Cal.App.4th 1049, 1055.) One of the reasons that a plaintiff is not permitted to amend in the face of an anti-SLAPP motion, and particularly after obtaining a ruling on an anti-SLAPP motion, is to prevent a lawsuit from becoming a moving target and thereby undermining the very purpose of the statute, as the court in *Simmons* explained:

> "Allowing a SLAPP plaintiff leave to amend the complaint once the court finds the prima facie showing has been met would completely undermine the statute by providing the pleader a ready escape from section 425.16's quick dismissal remedy. Instead of having to show a probability of success on the merits, the SLAPP plaintiff would be able to go back to the drawing board with a second opportunity to disguise the vexatious nature of the suit through more artful pleading. This would trigger a second round of pleadings, a fresh motion to strike, and inevitably another request for leave to amend. [¶] By the time the moving party would be able to dig out of this procedural quagmire, the SLAPP plaintiff will have succeeded in his goal of delay and distraction and running up the costs of his opponent. [Citation.] Such a plaintiff would accomplish indirectly what could not be accomplished directly, i.e., depleting the defendant's energy and draining his or her resources. [Citation.] This would totally frustrate the Legislature's objective of providing a quick and inexpensive method of unmasking and dismissing such suits. [Citation.]" (*Simmons*, *supra*, at pp. 1073–1074.)

*Nguyen-Lam*, *supra*, 171 Cal.App.4th 858, cited by the plaintiffs, appears to present the sole exception to this otherwise broadly accepted rule. The *Nguyen-Lam* court was reviewing a ruling by the trial court granting a defendant's anti-SLAPP motion,

37

but also granting the plaintiff an opportunity to amend her complaint to correct a possible deficiency in her pleading; the plaintiff's complaint for defamation was ambiguous as to whether the plaintiff had properly alleged actual malice. (*Id.* at pp. 868, 869–870.)[17] Apparently failing to appreciate that her role as a potential school superintendent rendered her a public figure,[18] the plaintiff had failed to *clearly* plead actual malice. (*Ibid.*) However, as the trial court determined, and the appellate court agreed, the evidence submitted in connection with the motion to strike was sufficient to demonstrate that the defendant had acted with actual malice in making provably false oral statements about the plaintiff. (*Ibid.*)

In deciding whether to affirm the trial court's order permitting the plaintiff to amend her complaint to adequately allege that the defendant had acted with malice, the *Nguyen-Lam* court distinguished *Simmons* and noted that unlike the *Simmons* plaintiff, the *Nguyen-Lam* plaintiff's proposed amendment before the trial court would not "attempt to void [the] defendant's showing on the first prong of the anti-SLAPP inquiry." (*Nguyen-Lam*, *supra*, 171 Cal.App.4th at p. 870.) The *Nguyen-Lam* court further

---

17    The *Nguyen-Lam* court determined that it "need not resolve whether plaintiff adequately alleged actual malice in her original complaint," given that "facts probative of actual malice emerged through the evidence the parties submitted for the hearing on the strike motion." (*Nguyen-Lam*, *supra*, 171 Cal.App.4th at pp. 868, 869–870.)

18    "[W]hen the plaintiff is a public figure, he or she 'must also show the speaker made the objectionable statements with malice in its constitutional sense ' 'that is, with knowledge that it was false or with reckless disregard of whether it was false or not.' " [Citation.]' [Citation.]" (*Nygård, Inc. v. Uusi-Kerttula* (2008) 159 Cal.App.4th 1027, 1048.)

explained that its decision was also based on the fact that the "plaintiff's amendment had nothing to do with [the] defendant's assertion his statements were made in connection with his right of petition or free speech. Rather, assuming that showing had been made, and in conjunction with her burden on the second prong to show a probability of prevailing on the merits, [the] plaintiff sought to amend the complaint to plead specifically that [the] defendant harbored the requisite actual malice as shown by the evidence presented for the hearing on the strike motion." (*Id.* at pp. 870–871.)

The *Nguyen-Lam* court determined that because the plaintiff had demonstrated a probability of prevailing at trial if she could amend her complaint to include malice, " '[d]isallowing an amendment would permit [the] defendant to gain an undeserved victory, undeserved because it was not what the Legislature intended when it enacted the anti-SLAPP statute.' " (*Nguyen-Lam*, *supra*, 171 Cal.App.4th at p. 873.) The court concluded that when "the strike opponent has demonstrated the requisite probability of success in showing such malice, as here, her complaint falls outside the purpose of the anti-SLAPP statute—indeed, it is not a SLAPP suit at all. Simply put, the Legislature did not intend to shield statements shown to be malicious with an unwritten bar on amendment in the circumstances here. Consequently, the trial court did not err in permitting [the] plaintiff to amend her complaint to plead actual malice in conformity with the proof presented at the hearing on the strike motion." (*Ibid.*)

Assuming that *Nguyen-Lam* was correctly decided, the unique exception articulated in *Nguyen-Lam* is inapplicable here. The *Nguyen-Lam* plaintiff sought to

39

amend her complaint to plead a necessary element (malice) of a claim for which the defendant's protected activity had already been sufficiently pleaded (defamation). (*Nguyen-Lam*, *supra*, 171 Cal.App.4th at p. 862.) Thus, the plaintiff was not seeking to amend the "allegations of protected activity that are asserted as grounds for relief" (*Baral*, *supra*, 1 Cal.5th at p. 395, italics omitted) in the face of the anti-SLAPP ruling, but rather, was seeking to amend to further allege the legal elements necessary for relief to be granted based on the same activity that was already alleged in the deficient complaint. Thus, in *Nguyen-Lam*, the proposed amendment to the complaint would not trigger a new anti-SLAPP motion, since the trial court had already determined that the conduct alleged in the first pleading, which would be the same in any amended pleading, was protected under the anti-SLAPP motion (prong one) and that the plaintiff had demonstrated a probability of prevailing on all necessary elements (prong two), including the element of malice.[19]

The plaintiffs indicate that they would amend to assert that other statements made in the Hemp Oil Hustlers Article—statements that are not identified or referred to in the second amended complaint—are false and defamatory. The plaintiffs would thus be

---

[19]     The *Nguyen-Lam* court noted that the defendant had "admitted in his first declaration [that] he had never met plaintiff and knew of her only through media reports," and there was nothing in those reports that suggested that the plaintiff was a "communist." (*Nguyen-Lam*, *supra*, 171 Cal.App.4th at p. 869.) The appellate court concluded that "because defendant had no basis for his claim plaintiff was a Communist, a jury could reasonably determine he lied in leveling the charge against her and, moreover, could infer malice from the lie." (*Ibid.*)

asserting entirely new causes of action for defamation, based on conduct different from that alleged in the second amended complaint. Such an amendment would implicate the precise concerns articulated by the *Simmons* court as counseling against permitting amendment in the face of an adverse anti-SLAPP ruling, in that it would trigger "a fresh motion to strike," and would allow "a plaintiff [to] accomplish indirectly what could not be accomplished directly, i.e., depleting the defendant's energy and draining his or her resources," which would, in turn, "totally frustrate the Legislature's objective of providing a quick and inexpensive method of unmasking and dismissing such suits." (*Simmons*, *supra*, 92 Cal.App.4th at pp. 1073–1074.)

We conclude that it would not be appropriate to permit plaintiffs to amend their complaint to plead entirely new causes of action, particularly when there was nothing prohibiting the plaintiffs from pleading claims based on the purportedly defamatory unpled statements at the outset of this action. (See *Navellier v. Sletten* (2003) 106 Cal.App.4th 763, 772 [plaintiff's should not be permitted to plead new cause of action for malicious prosecution when nothing prohibited plaintiff's from timely alleging the cause of action before].) As we have explained, to allow the plaintiffs to amend again would serve only to create the procedural quagmire discussed in *Simmons* as being antithetical to the purpose of the anti-SLAPP statute. Such a result is simply not justified under the circumstances of this case. We therefore conclude that the plaintiffs may not amend to attempt yet again to adequately plead new claims for libel against the Project CBD defendants based on purportedly false statements in the Hemp Oil Hustlers Article.

41

IV.

DISPOSITION

The order of the trial court is reversed.  On remand, the trial court is directed to enter an order granting the Project CBD defendants' anti-SLAPP motion in its entirety. The Project CBD defendants are entitled to costs on appeal.

AARON, J.

WE CONCUR:

HALLER, Acting P. J.

GUERRERO, J.